# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID THOMPSON, on behalf of himself and all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CREDIT UNION ONE | |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW COMES, the Plaintiff David Thompson ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding himself and on information and belief as to other allegations.

## INTRODUCTION

1.     This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Credit Union One ("CUO"), arising from the unfair and unconscionable assessment and collection of "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn.

2.      These practices breach contractual promises made in CUO's adhesion contracts, the "Account Documents".

3.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that CUO will <u>only</u> charge OD Fees on transactions where there are insufficient funds to cover them.

4.      As happened to Plaintiff, however, CUO charges OD Fees even when there are sufficient funds to cover a debit card or other point of sale ("POS") transaction, in breach of the Account Documents and the duty of good faith and fair dealing. The wrongful taking of funds from accounts also constitutes conversion.

5.      CUO's customers have been injured by CUO's improper practices to the tune of millions of dollars billed from their accounts in violation of their agreements with CUO.

6.      On behalf of himself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES AND JURISDICTION

7.      Plaintiff Thompson is a natural person who is a citizen of Michigan and resides in Garden City, MI. Plaintiff has a personal checking account with CUO, which is governed by CUO's Account Documents.

8.      Defendant is a member-owned financial cooperative providing banking services in this district. CUO has its headquarters in Ferndale, Michigan. CUO has

over $1.5 billion in assets and provides services to customers through credit union branches in Michigan.

9.    Venue and jurisdiction are proper in this district because CUO is headquartered in a county encompassed by this District.

10.    This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § § 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant. Further, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    CUO CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

11.    Plaintiff has a checking account with CUO.

12.    CUO issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

13.     Pursuant to its Account Documents, CUO charges fees for transactions that purportedly result in an overdraft.

14.     Plaintiff Thompson brings this cause of action challenging CUO's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

15.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, CUO immediately reduces accountholders' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. Therefore, customers' accounts will always have sufficient available funds to cover these transactions because CUO has already sequestered these funds for payment.

16.     However, CUO still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

17.     Despite putting aside sufficient available funds for debit card and other POS transactions at the time those transactions are authorized, CUO later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

18.     CUO maintains a running account balance in real time, tracking funds accountholders have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made.  When a customer makes a purchase with a debit card, CUO sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance.  Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

19.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20.     Still, despite keeping those held funds off-limits for other transactions, CUO improperly charges OD Fees on those APPSN Transactions, even though the APPSN Transactions ***always*** have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which
> reduced a customer's available balance but did not result in an overdraft

5

at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22. There is no justification for these practices, other than to maximize CUO's OD Fee revenue. APPSN Transactions only exist because intervening

checking account transactions supposedly reduce an account balance.  But CUO is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year.  But CUO was not content with these millions in OD Fees.  Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23.    Besides being unfair and unjust, these practices breach contract promises made in CUO's adhesion contracts—contracts which fail to inform accountholders about the true nature of CUO's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

24.    In plain, clear, and simple language, the Account Documents covering OD Fees promise that CUO will only charge OD Fees on transactions that have insufficient funds to cover that transaction.

25.    In short, CUO is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

A.    *Mechanics of a Debit Card Transaction*

26.    A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from CUO.  When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to CUO, which verifies that the customer's

account is valid and that sufficient available funds exist to cover the transaction amount.

27.    At this step, if the transaction is approved, CUO immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

29.    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

30.    CUO (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, CUO is obligated to pay the transaction no matter what.  For debit card transactions, that moment of decision can only occur

at the point of sale, at the instant the transaction is authorized or declined.  It is at that point—and only that point—when CUO may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge.  This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity.  *See* Electronic Fund Transfers, 74 Fed.  Reg. 59033-01, 59046 (Nov. 17, 2009).

31.    There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### B.    *CUO's Account Contract*

32.    Plaintiff has a CUO checking account, which is governed by CUO's standardized Account Documents.

33.    CUO's Deposit Agreement promises that the moment of authorization, which is when CUO decides whether to "pay" a debit card transaction or not, is dispositive for purposes of OD Fees:

> **Payment of Overdrafts. If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, *we may return the item or pay it, as described below*.** The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one review of the account required. We do not have to notify you

if your account does not have sufficient available funds in order to pay an item. **Your account may be subject to a charge for each item regardless of whether we pay or return the item.** If we offer standard overdraft services, this service allows us to authorize payment for the following types of transactions regardless of whether your share or deposit account has sufficient funds: (1) share drafts/checks and other transactions made using your checking account, except as otherwise described below; (2) automatic bill payments; (3) ACH transactions. For ATM and one-time debit card transactions, you must affirmatively consent to such coverage. **Without your consent, the Credit Union may not authorize and pay an ATM or one-time debit card transaction that will result in insufficient funds in your account.** If you have established a service linking your share or deposit account with other individual or joint accounts, you authorize us to transfer funds from other another account of yours to cover an insufficient item, including transfers from a share or deposit account, an overdraft line-of-credit account, or other account you so designate. Services and fees for these transactions are shown in the document the Credit Union uses to capture your affirmative consent and the Schedule of Fees and Charges. Except as otherwise agreed in writing, **if we exercise our right to use our discretion to pay such items that result in an insufficiency of funds in your account, we do not agree to pay them in the future and may discontinue coverage at any time without notice.** If we pay these items or impose a fee that results in insufficient funds in your account, you agree to pay the insufficient amount, including the fee assessed by us, in accordance with our standard overdraft services or any other service you may have authorized with us, or if you do not have such protections with us, in accordance with any overdraft payment policy we have, as applicable.

Deposit Agreement, Ex. A, at 6.

34.    CUO further promises that an "overdraft" occurs when you do not have enough money in your account to "cover" a transaction. It further links the time of authorization as the moment the credit union determines whether an overdraft occurs.

Platinum Mastercard Debit Card. If approved, you may use your Mastercard® card to purchase goods and services from participating merchants. However, you may not use your card to initiate any type of electronic gambling transactions
through the Internet. If you wish to pay for goods or services over the Internet, you may be required to provide card number security information before you will be permitted to complete the transaction. You agree that you will not use your card for any transaction that is illegal under applicable federal, state, or local law. Funds to cover your card purchases will be deducted from your checking account. **For ATM and one-time debit card transactions, you must consent to the Credit Union's overdraft protection plan in order for the transaction amount to be covered under the plan. Without your consent, the Credit Union may not authorize and pay an overdraft resulting from these types of transactions.** Services and fees for overdrafts are shown in the document the Credit Union uses to capture the member's opt-in choice for overdraft protection and the Schedule of Fees and Charges.

Deposit Agreement, Ex. A, at 12.

35.    Likewise, CUO's Overdraft Disclosure likewise promises that an overdraft only occurs when you do not have enough funds to "cover" a transaction and again promises that the moment of "authorization" is when the credit union determines whether to assess a fee:

**An overdraft occurs on your account when you do not have enough available funds in your checking account to cover a transaction**. Your account features an automatic overdraft protection plan whereby funds from applicable savings accounts will be transferred to your checking account to cover any overdraft. If funds are transferred from any of your applicable savings accounts to cover an overdraft you will be assessed a fee according to the Personal Accounts Fee Guide. We also offer a line of credit that may serve as an additional overdraft protection plan. You may inquire about this plan at any branch or by calling the Member Contact Center at 800451-4292.

In the event you do not have enough available funds in your overdraft protection plans to cover an overdraft, we may, at our discretion, extend an additional overdraft service to you. This service allows Credit Union ONE the discretion to honor and pay checks, automatic bill payments and other transactions made using your account number so that the items presented against your checking account are not returned unpaid. **As part of this overdraft service the credit union may also authorize and pay, at our discretion, overdrafts as a result of ATM and everyday debit card transactions if you tell us to (Opt-In).** If you do not opt-in to this service for ATM and everyday debit card transactions your transaction will be declined.

. . . .

For each item paid using overdraft service you will be charged an overdraft fee as published in the Personal Accounts Fee Guide.

Ex. B, Overdraft Disclosure.

36.     For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to "cover" those transactions—yet CUO assesses OD Fees on them anyway.

37.     The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance.  Of course, that is not true for APPSN Transactions.

38.     APPSN transactions are always *initiated* at the time the customer swipes the debit card when there are sufficient available funds in the account.

39.     In fact, CUO actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions.  Instead, it uses a secret posting process described below.

40.     All the above representations and contractual promises are untrue.  In fact, CUO charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance.  No express language in any document states that CUO may impose OD Fees on any APPSN Transactions.

41.     The Account Documents misconstrue CUO's true debit card processing and overdraft practices.

42.     First, and most fundamentally, CUO charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that CUO will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

43.     CUO assesses OD Fees on APPSN Transactions that *do* have sufficient funds available to cover them throughout their lifecycle.

44.     CUO's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so.  This discrepancy between CUO's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

13

45.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

46.     Because these withdrawals take place upon initiation, they cannot be re-debited later.  But that is what CUO does when it re-debits the account during a secret batching posting process.

47.     In reality, CUO's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

48.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds.  As such, CUO cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

49.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, CUO does something new and unexpected, during the middle of the night, during its nightly batch posting process.  Specifically, CUO releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

50.    This secret step allows CUO to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which CUO specifically set aside money to pay.

51.    This discrepancy between CUO's actual practices and the contract causes accountholders to incur more OD Fees than they should.

52.    In sum, there is a huge gap between CUO's practices as described in the Account Documents and CUO's practices in reality.

C.    *CUO Abuses Contractual Discretion*

53.    CUO's treatment of debit card transactions to charge OD Fees is not simply a breach of the express terms of the numerous Account Documents.   In addition, CUO exploits contractual discretion to the detriment of accountholders when it uses these policies.

54.    CUO uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

55.    CUO uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

D.   *Reasonable   Accountholders   Understand   Debit   Card/POS Transactions are Debited Immediately*

56.   The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card/POS transactions. That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions).  If funds are immediately debited, then they are necessarily applied to the debit card transactions for which they are debited.

57.   CUO was and is aware that this is precisely how accountholders reasonably understand such transactions to work.

58.   CUO knows that many accountholders prefer debit cards for these very reasons.  Research indicates that accountholders prefer debit cards as a budgeting device because they don't allow debt like credit cards do, and because the money comes directly out of a checking account.

59.   Consumer Action, a national nonprofit consumer education and advocacy organization, advises consumers determining whether they should use a debit card that "[t]here is no grace period on debit card purchases the way there is on credit card purchases; the money is immediately deducted from your checking account. Also, when you use a debit card you lose the one or two days of 'float' time that a check usually takes to clear." *What Do I Need to Know About Using a Debit Card?*,          ConsumerAction          (Jan.          14,          2019),

16

https://www.consumeraction.org/helpdesk/articles/what_do_i_need_to_know_abo
ut_using_a_debit_card.

60.     Further, Consumer Action informs consumers that "Debit cards offer
the convenience of paying with plastic without the risk of overspending. When you
use a debit card, you do not get a monthly bill. You also avoid the finance charges
and debt that can come with a credit card if not paid off in full."  *Understanding
Debit          Cards*,          ConsumerAction,          http://www.consumer-
action.org/english/articles/understanding_debit_cards (last visited March 11, 2020).

61.     This understanding is a large part of the reason that debit cards have
risen in popularity. The number of terminals that accept debit cards in the United
States has increased by approximately 1.4 million in the last five years, and with that
increasing ubiquity, consumers have (along with credit cards) viewed debit cards
"as a more convenient option than refilling their wallets with cash from an ATM."
Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*,
MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/morepeople-are-
using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

62.     Not only have accountholders increasingly transitioned from cash to
debit cards, but they believe that a debit card purchase is the fundamental equivalent
of a cash purchase, with the swipe of a card equating to handing over cash,
permanently and irreversibly.

63.     CUO was aware of accountholder perception that debit transactions reduce an available balance *in a specified order*—namely, the moment they are actually initiated—and its account agreement only supports this perception.

**E.     *Plaintiff's Experience***

64.     As examples, on June 18, 2020 and January 6, 2020, Plaintiff was assessed OD Fees for debit card transactions that settled that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed the OD Fee.  At the time that the positive funds were deducted, Plaintiff had a positive balance, which would not have caused an OD Fee.

**F.     *CUO Violations Regulation E***

65.     The federal government has stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulations giving financial institutions the authority to charge overdraft fees on ATM and one-time debit card transactions only if the institution first obtained the affirmative consent of the customer to do so. (12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule")).

66.     To qualify as affirmative consent, the opt-in form must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an

overdraft, and the maximum number of fees that can be assessed on any given day (if there is no maximum, that fact must be stated);

- The financial institution must state whether alternatives, such as linking the checking account to a secondary account or line of credit, are available.

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

67.    If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of Regulation E's Opt-in Rule, including fulfilling each of the above requirements, then it is not permitted to charge overdraft fees on ATM and one-time debit card transactions.  CUO did not fulfill these prerequisites because at all relevant times, CUO has had an overdraft program in place for assessing overdraft fees which is contrary to CUO's representations about its overdraft program to its members.

## CLASS ALLEGATIONS

68.     Plaintiff brings this action on behalf of himself and on behalf of all

others similarly situated pursuant to Rule 23. The Classes include:

>   All consumers who, within the applicable statute of limitations period,
>   were charged OD Fees on APPSN transactions on a CUO checking
>   account (the "OD Fees Class").

>   All consumers who, during the applicable statute of limitations, were
>   charged   an overdraft fee for ATM or non-recurring debit card
>   transaction(s) (the "Regulation E Class").

69.     Excluded from the Classes are CUO, CUO's subsidiaries and affiliates,

their officers, directors and member of their immediate families and any entity in

which Defendant has a controlling interest, the legal representatives, heirs,

successors or assigns of any such excluded party, the judicial officer(s) to whom this

action is assigned, and the members of their immediate families.

70.     Plaintiff reserves the right to modify or amend the definition of the

proposed Class and/or to add a subclass(es), if necessary, before this Court

determines whether certification is appropriate.

71.     The parties are numerous such that joinder is impracticable.  Upon

information and belief, and subject to class discovery, the Class consist of thousands

of members or more, the identity of whom are within the exclusive knowledge of

and can be ascertained only by resorting to CUO's records.  CUO has the

administrative capability through its computer systems and other records to identify

all members of the Class, and such specific information is not otherwise available to Plaintiff.

72.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because CUO has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

a)    Whether CUO improperly charged OD Fees on APPSN Transactions;

b)    Whether the conduct enumerated above violates the contract;

c)    Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

d)    Whether CUO's practices constitute conversion;

e)    Whether CUO violated Regulation E; and

f)    the appropriate measure of damages.

73.    Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by CUO, as described herein.

74.    Plaintiff is a more than an adequate representative of the Class in that Plaintiff has a CUO checking accounts and has suffered damages as a result of CUO's contract violations.  In addition:

a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained

21

competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions.

b)   There is no conflict of interest between Plaintiff and the unnamed members of the Class.

c)   Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75.   Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

76.   Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of CUO's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by CUO's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the

22

rights of the members of the Class.

77.    CUO has acted or refused to act on grounds generally applicable to the

class, thereby making appropriate corresponding declaratory relief with respect to

the Class as a whole.

78.    All conditions precedent to bringing this action have been satisfied
and/or waived.

## FIRST CLAIM FOR RELIEF

### Breach of Contract, Including the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the OD Fee Class)

79.    Plaintiff incorporates by reference the preceding paragraphs.

80.    Plaintiff and CUO have contracted for credit union services, as

embodied in CUO's Account Documents and related documentation.

81.    All contracts entered by Plaintiff and the Class are identical or

substantively identical because CUO's form contracts were used uniformly.

82.    CUO has breached the express terms of its own agreements as described

herein when it charged overdraft fees on accounts that were not overdrawn.

83.    Further, under the law of the state of Michigan, good faith is an element

of every contract.  All contracts impose upon each party a duty of good faith and fair

dealing.  Good faith and fair dealing, in connection with executing contracts and

discharging performance and other duties according to their terms, means preserving

the spirit – not merely the letter – of the bargain.  Put differently, the parties to a

contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

85.     CUO abused the discretion it granted to itself when it assessed OD Fees on accounts that were not actually overdrawn.

86.     In these and other ways CUO violated good faith and fair dealing.

87.     CUO willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing revenue from Plaintiff and other members of the Class.

88.     Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contracts.

89.     Plaintiff and members of the Class have sustained damages as a result of CUO's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

90.    Plaintiff and members of the Class have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Conversion Under MCL 600.2919a
### (On Behalf of Plaintiff and the OD Fee Class)

91.    Plaintiff incorporates by reference the preceding paragraphs.

92.    Plaintiff and members of the class entrusted money to be held by Defendant.

93.    The money Defendant held for Plaintiff and class members were held in identifiable accounts and was still the property of Plaintiff and class members.

94.    These deposits were bailments and the Defendant was a bailee.

95.    Defendant stole, embezzled and/or converted funds belonging to Plaintiff and members of the class and converted Plaintiff's funds to its own use.

96.    Money taken out of the accounts of Plaintiff and members of the class for OD fees were converted to Defendant's ledgers.

97.    Plaintiff and members of the class no longer had use of the funds taken as OD fees.

98.    Defendant did have use of funds taken from the account of Plaintiff and from the accounts of members of the class as OD fees.

99.    Defendant had dominion and control of all funds taken from accounts as OD fees.

100.   Defendant wrongfully took OD fees from the accounts of Plaintiff and members of the class.

101.   Plaintiff and members of the class were harmed and are entitled to all of the remedies described in MCL 600.2919a.

### THIRD CLAIM FOR RELIEF

### Violation of Electronic Fund Transfers Act (Regulation E)
### 12 C.F.R. § 1005 et seq. (authority derived from 15 U.S.C. § 1693 *et seq.*))
### (On Behalf of Plaintiff and the OD Fee Class and the Regulation E Class)

102.   Plaintiff incorporates by reference the preceding paragraphs.

103.   By charging overdraft fees on ATM and nonrecurring transactions, Defendant violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

104.   Specifically, the charges violated what is known as the "Opt In Rule" of Regulation E (12 C.F.R. § 1005.17.) The Opt In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice]. . . describing the institution's overdraft service" and (ii) "[p ]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter

26

into the overdraft program. (Id.) The notice "shall be clear and readily understandable." (12 C.F.R. §205.4(a)(l).) To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

105. The intent and purpose of this Opt-In Form is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"-as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank* (*USA*), 2016 U.S. Dist. LEXIS 41487, *11 (S.D. N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

106.  Defendant has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. Defendant's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, *inter alia*, it states that an overdraft occurs when you do "not have enough available funds in your checking account to cover a transaction" when in fact Defendant assesses overdraft fees when there is enough money in the account to cover the transaction at issue.

107.  As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, Defendant has harmed Plaintiff and the Classes.

108.  Due to Defendant's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

1.  Certification for this matter to proceed as a class action on behalf of the Class;

2.  Declaring CUO's OD Fee policies and practices to be in breach of its contract with accountholders;

28

3.      Restitution of all OD Fees paid to CUO by Plaintiff and the members
of the Class, as a result of the wrongs alleged herein in an amount to be
determined at trial;

4.      Actual damages in an amount according to proof;

5.      Statutory damages under the applicable law;

6.      Treble Damages under MCL 600.2919a;

7.      Pre-judgment and post-judgment interest at the maximum rate
permitted by applicable law;

8.      For costs and attorneys' fees under the common fund doctrine, and all
other applicable law; and

9.      Such other relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

Date:  August 26, 2020              /s/ Jeff Kaliel_____
                                   Jeffrey D. Kaliel
                                   Sophia G. Gold
                                   **KALIEL PLLC**
                                   1875 Connecticut Ave. NW 10th Floor
                                   Washington, D.C.  20009
                                   Telephone: (202) 350-4783
                                   *jkaliel@kalielpllc.com*
                                   *sgold@kalielplllc.com*

                                   Taras Kick (Not yet admitted)
                                   **The Kick Law Firm, APC**
                                   815 Moraga Drive
                                   Los Angeles, CA 90049

Phone: (310)395-2988
Fax: (310)395-2088

***Counsel for Plaintiff and the Proposed
Class***

# EXHIBIT A

# MEMBERSHIP AGREEMENT AND DISCLOSURES

Privacy Disclosure

Membership and Account Agreement

Funds Availability Policy Disclosure

Electronic Fund Transfers Agreement & Disclosure

Truth-in-Savings Disclosure



**Credit Union ONE**

400 E. Nine Mile Road

Ferndale, MI 48220



© CUNA Mutual Group All Rights Reserved

32861-e

Rev. 11/15

| **FACTS** | **WHAT DOES CREDIT UNION ONE DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and account balances<br>■ credit history and overdraft history<br>■ payment history and transaction or loss history<br><br>When you are *no longer* our member, we continue to share your information as described in this notice. |
|---|---|

| **How?** | All financial companies need to share members' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their members' personal information; the reasons Credit Union ONE chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Credit Union ONE share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or to report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| **Questions?** | Call 1-800-451-4292 or go to www.cuone.org |
|---|---|

**Page 2**

## What we do

| | |
|---|---|
| **How does Credit Union ONE protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Credit Union ONE collect my personal information?** | We collect your personal information, for example, when you<br>■ open an account or apply for financing<br>■ show us your driver's license or provide account information<br>■ use your credit or debit card<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br><br>State law and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Credit Union ONE has no affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Credit Union ONE does not share with our nonaffiliates so they can market to you.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include credit card companies, insurance companies and financial service companies.* |

## Other important information

| |
|---|
| |

# MEMBERSHIP AND ACCOUNT AGREEMENT

This Agreement covers your rights and responsibilities concerning your accounts and the rights and responsibilities of the Credit Union providing this Agreement (Credit Union). In this Agreement, the words "you," "your," and "yours" mean anyone who signs an Account Card, Account Change Card, or any other account opening document (Account Card), or for whom membership and/or service requests are approved through the Credit Union's online application and authentication process.  The words "we," "us," and "our" mean the Credit Union. The word "account" means any one (1) or more share or other accounts you have with the Credit Union.

Your account type(s) and ownership features are designated by you on your Account Card or through the Credit Union's online application and authentication process. By signing an Account Card or authenticating your request, each of you, jointly and severally, agree to the terms and conditions in this Agreement, and any Account Card, Funds Availability Policy Disclosure, Truth-in-Savings Disclosure, Electronic Fund Transfers Agreement and Disclosure, Privacy Disclosure, or Account Receipt accompanying this Agreement, the Credit Union's bylaws and policies, and any amendments to these documents from time to time that collectively govern your membership and accounts.

**1.  MEMBERSHIP ELIGIBILITY** - To join the credit union, you must meet the membership requirements, including the establishment of a membership share as set forth in the Credit Union's bylaws.  "Membership Share" means a share of a domestic credit union equal in amount to the par value of the Credit Union's shares that you acknowledge is credited to your account by the Credit Union, is required as a condition of membership in the Credit Union, and is subject to any withdrawal restriction or other standards established by the Credit Union for membership shares.  You authorize us to check your account, credit and employment history, and obtain reports from third parties, including credit reporting agencies, to verify your eligibility for the accounts and services you request.

**2.  INDIVIDUAL ACCOUNTS -** An individual account is an account owned by one (1) member (individual, corporation, partnership, trust, or other organization) qualified for credit union membership. If the account owner dies, the interest passes, subject to applicable law, to the decedent's estate or beneficiary, subject to other provisions of this Agreement governing our protection for honoring transfer and withdrawal requests of an owner or owner's agent prior to notice of an owner's death, and to any security interest or pledge granted by the account owner, and subject to our statutory lien rights.

**3.  JOINT ACCOUNTS -** A joint account is an account owned by two (2) or more persons.

**a.  Rights of Survivorship.** Unless otherwise stated on the Account Card or documented through the Credit Union's online application and authentication process, a joint account includes rights of survivorship. This means that when one (1) owner dies, all sums in the account will pass to the surviving owner(s). A surviving owner's interest is subject to the Credit Union's statutory lien for the deceased owner's obligations and to any security interest or pledge granted by a deceased owner, even if a surviving owner did not consent to it.

**b.  Control of Joint Accounts.** Any owner is authorized and deemed to act for any other owner(s) and may instruct us regarding transactions and other account matters. Each owner guarantees the signature or authenticated request of any other owner(s). Any owner may withdraw or transfer funds, pledge to us all or any part of the shares, or stop payment on items without the consent of the other owner(s). We have no duty to notify any owner(s) about any transaction. We reserve the right to require written consent of all owners for any change to or termination of an account. If we receive written notice of a dispute between owners or inconsistent instructions from them, we may suspend or terminate the account and require a court order or written consent from all owners in order to act.

**c.  Joint Account Owner Liability.** If an item deposited in a joint account is returned unpaid, a joint account is overdrawn, or if we do not receive final payment on a transaction, the owners, jointly and severally, are liable to us for the amount of the returned item, overdraft, or unpaid amount and any charges, regardless of who initiated or benefited from the transaction. If any account owner is indebted to us, we may enforce our rights against any account of the indebted owner, including all funds in the joint account, regardless of who contributed the funds.

**4.  BENEFICIARY ACCOUNT DESIGNATIONS -** A beneficiary account designation is an instruction to the Credit Union that an account so designated is payable to the owner(s) during his, her, or their lifetimes and, when the last account owner dies, is payable to all surviving beneficiary designated on your account card. Each beneficiary shall separately own his/her equal share: the account divides equally among surviving beneficiaries upon the last surviving owner's death. Any beneficiary designation shall not apply to Individual Retirement Accounts (IRAs). We are not obligated to notify any beneficiary of the existence of any account nor the vesting of the beneficiary's interest in any account, except as otherwise provided by law. This paragraph does not apply to an account held on behalf of or in the name of a trust.

**5.  ACCOUNTS FOR MINORS -** We may require any account established by a minor to be a joint account with an owner who has reached the age of majority under state law and who shall, to the extent permitted by state law, be jointly and severally liable to us for any returned item, overdraft, or unpaid charges or amounts on such account. We may pay funds directly to the minor without regard to his or her minority. Unless a guardian or parent is an account owner, the guardian or parent shall not have any account access rights. We have no duty to inquire about the use or purpose of any transaction. We will not change the account status when the minor reaches the age of majority unless the change is authorized in writing by all account owners.

**6.  UNIFORM TRANSFERS TO MINORS ACCOUNT -** A Uniform Transfers to Minors Account (UTMA) is an individual account created by a custodian who deposits funds as an irrevocable gift to a minor. The minor to whom the gift is made is the beneficiary of the custodial property in the account. The custodian has possession and control of the account for the exclusive right and benefit of the minor and, barring a court order otherwise, is the only party authorized to make deposits, withdrawals, or close the account. We have no duty to inquire about the use or purpose of any transaction. If the custodian dies, we may suspend the account until we receive instructions from any person authorized by law to withdraw funds or a court order authorizing withdrawals.

**7.  AGENCY DESIGNATION ON AN ACCOUNT -** An agency designation on an account is an instruction to us that the owner authorizes another person to make transactions as agent for the account owner regarding the accounts designated. An agent has no ownership interest in the account(s) or credit union voting rights.  We have no duty to inquire about the use or purpose of any transaction made by the agent.

© CUNA Mutual Group 1993, 95, 96, 99, 2000, 03-07, 09, 10, 13 All Rights Reserved

**8. DEPOSIT OF FUNDS REQUIREMENTS -** Funds may be deposited to any account, in any manner approved by the Credit Union in accordance with the requirements set forth in the Truth-in-Savings Disclosure. Deposits made by mail, at night depositories, or at unstaffed facilities are not our responsibility until we receive them. We reserve the right to refuse or to return any deposit.

**a. Endorsements.** We may accept transfers, checks, drafts, and other items for deposit into any of your accounts if they are made payable to, or to the order of, one (1) or more account owners even if they are not endorsed by all payees. You authorize us to supply missing endorsements of any owners if we choose. If a check, draft, or item that is payable to two (2) or more persons is ambiguous as to whether it is payable to either or both, we may process the check, draft, or item as though it is payable to either person. If an insurance, government, or other check or draft requires an endorsement, we may require endorsement as set forth on the item. Endorsements must be made on the back of the check or draft within 1½ inches of the top edge, although we may accept endorsements outside this space. However, any loss we incur from a delay or processing error resulting from an irregular endorsement or other markings by you or any prior endorser will be your responsibility.

**b. Collection of Items.** We act only as your agent and we are not responsible for handling items for deposit or collection beyond the exercise of ordinary care. We are not liable for the negligence of any correspondent or for loss in transit, and each correspondent will only be liable for its own negligence. We may send any item for collection. Items drawn on an institution located outside the United States are handled on a collection basis only. You waive any notice of nonpayment, dishonor, or protest regarding items we purchase or receive for credit or collection to your account. We reserve the right to pursue collection of previously dishonored items at any time, including giving a payor financial institution extra time beyond any midnight deadline limits.

**c. Restrictive Legends.** Some checks and drafts contain restrictive legends or similar limitations on the front of the item. Examples of restrictive legends include "two signatures required," "void after 60 days," and "not valid over $500.00." We are not liable for payment of any check or draft contrary to a restrictive legend or other limitation contained in or on the item unless we have specifically agreed in writing to the restriction or limitation.

**d. Final Payment.** All items or Automated Clearing House (ACH) transfers credited to your account are provisional until we receive final payment. If final payment is not received, we may charge your account for the amount of such items or ACH transfers and impose a return item charge on your account. Any collection fees we incur may be charged to your account. We reserve the right to refuse or return any item or funds transfer.

**e. Direct Deposits.** We may offer preauthorized deposits (e.g., payroll checks, Social Security or retirement checks, or other government checks) or preauthorized transfers from other accounts. You must authorize direct deposits or preauthorized transfers by filling out a separate form. You must notify us at least 30 days in advance to cancel or change a direct deposit or transfer option. If your account is overdrawn, you authorize us to deduct the amount your account is overdrawn from any deposit, including deposits of government payments or benefits. If we are required to reimburse the U.S. Government for any benefit payment directly deposited into your account, we may deduct the amount returned from any of your accounts, unless prohibited by law.

**f. Crediting of Deposits.** Deposits made after the deposit cutoff time and deposits made on holidays or days other than our business days will be credited to your account on the next business day.

**9. ACCOUNT ACCESS -**

**a. Authorized Signature.** Your signature on the Account Card, or authentication and approval of your account, authorizes your account access. We will not be liable for refusing to honor any item or instruction if we believe the signature is not genuine. If you have authorized the use of a facsimile signature, we may honor any check or draft that appears to bear your facsimile signature, even if it was made by an unauthorized person. You authorize us to honor transactions initiated by a third person to whom you have given your account information, even if you do not authorize a particular transaction.

**b. Access Options.** You may withdraw or transfer funds from your account(s) in any manner we permit (e.g., at an automated teller machine, in person, by mail, Internet access, automatic transfer, or telephone, as applicable). We may return as unpaid any check or draft drawn on a form we do not provide, and you are responsible for any loss we incur handling such a check or draft. We have the right to review and approve any form of power of attorney and may restrict account withdrawals or transfers. We may refuse to honor a power of attorney if our refusal is conducted in accordance with applicable state law.

**c. Credit Union Examination.** We may disregard any information on any check or draft other than the signature of the drawer, the amount, and any magnetic encoding. You agree that we do not fail to exercise ordinary care in paying an item solely because our procedures do not provide for sight examination of items.

**10. FUND TRANSFERS -** Except as amended by this Agreement, electronic fund transfers we permit that are subject to Article 4A of the Uniform Commercial Code will be subject to such provisions of the Uniform Commercial Code as enacted by the state where the main office of the Credit Union is located. We may execute certain requests for an electronic fund transfer by Fedwire. Fedwire transactions are subject to Federal Reserve Board Regulation J. You may order an electronic fund transfer to or from your account. We will debit your account for the amount of the electronic fund transfer and will charge your account for any fees related to the transfer. Unless we agree otherwise in writing, we reserve the right to refuse to execute any order to transfer funds to or from your account. We are not obligated to execute any order to transfer funds out of your account if the amount of the requested transfer plus applicable fees exceeds the available funds in your account. We are not liable for errors, delays, interruptions, or transmission failures caused by third parties or circumstances beyond our control, including mechanical, electronic, or equipment failure. We will not provide you with next day notice of ACH transfers, wire transfers, and other electronic payments credited to your account. You will receive notice of such credits on your account statements. You may contact us to determine whether a payment has been received. If we fail to properly execute a payment order, and such action results in a delay in payment to you, we will pay you dividends or interest for the period of delay as required by applicable law. The dividends or interest paid to you will be based on the lowest nominal dividend or interest rate we were paying on any account during that period. Payment orders we accept will be executed within a reasonable time of receipt but may not necessarily be executed on the date they are received. Cutoff times may apply to the receipt, execution and processing of fund transfers, payment orders, cancellations, and amendments. If a request for a fund transfer, payment order, cancellation, or amendment is received after a cutoff time, it may be treated as having been received on the next fund transfer business day. Information about any cutoff times is available upon request. From time to time, we may need to suspend processing of a transaction for greater scrutiny or verification in accordance with applicable law, and this action may affect settlement or availability of the transaction. When you initiate a wire transfer, you may identify the recipient and any financial institution by name and by account or identifying number. The Credit Union and any other financial institutions facilitating the transfer may rely strictly on the account or identifying number, even if the number identifies a different person or financial institution. Any account owner may amend or cancel a payment order, even if that person did not initiate the order. We may refuse any request to amend or cancel a payment order that we believe will expose the Credit Union to liability or loss. Any request that we accept to amend or cancel a payment order

will be processed within a reasonable time after it is received. You agree to hold us harmless from and indemnify us for all losses and expenses resulting from any actual or attempted amendment or cancellation of a payment order. We may require you to follow a security procedure to execute a payment order or certain electronic fund transfer transactions. We will notify you of any such security procedures. Unless we permit you to establish a different security procedure, you agree that the security procedures contained in the Credit Union's policies, of which we have notified you, are commercially reasonable verification of payment orders and other electronic fund transfers. If we permit you to establish a different security procedure, you agree that procedure is a commercially reasonable method of verifying electronic funds transfers. If we conduct a remittance transfer(s) on your behalf acting as a remittance transfer provider, such transactions will be governed by 12 C.F.R. part 1005, subpart B-Requirements for remittance transfers. A "remittance transfer" is an electronic transfer of funds of more than $15.00 which is requested by a sender and sent to a designated recipient in a foreign country by a remittance transfer provider. Terms applicable to such transactions may vary from those disclosed herein and will be disclosed to you at the time such services are requested and rendered in accordance with applicable law.

**11. ACCOUNT RATES AND FEES -** We pay account earnings and assess fees against your account as set forth in the Truth-in-Savings Disclosure and Schedule of Fees and Charges. We may change the Truth-in-Savings Disclosure or Schedule of Fees and Charges at any time and will notify you as required by law.

**12. TRANSACTION LIMITATIONS -**

**a. Withdrawal Restrictions.** We will pay checks or drafts, permit withdrawals, and make transfers from available funds in your account. The availability of funds in your account may be delayed as described in our Funds Availability Policy Disclosure. We may also pay checks or drafts, permit withdrawals, and make transfers from your account from insufficient available funds if you have established an overdraft protection plan or, if you do not have such a plan with us, in accordance with our overdraft payment policy.

We may refuse to allow a withdrawal in some situations and will advise you accordingly if: (1) there is a dispute between account owners (unless a court has ordered the Credit Union to allow the withdrawal); (2) a legal garnishment or attachment is served; (3) the account secures any obligation to us; (4) required documentation has not been presented; or (5) you fail to repay a credit union loan on time. We may require you to give written notice of seven (7) to 60 days before any intended withdrawals.

**b. Transfer Limitations.** We may limit the dollar amount or the number of transfers from your account. Please consult your Truth-in-Savings Disclosure or your Electronic Fund Transfers Agreement and Disclosure.

**13. CERTIFICATE ACCOUNTS -** Any time deposit, term share, share certificate, or certificate of deposit account allowed by state law (certificate account), whichever we offer, is subject to the terms of this Agreement, the Truth-in-Savings Disclosure, and the Account Receipt for each account, the terms of which are incorporated herein by reference.

**14. OVERDRAFTS -**

**a. Payment of Overdrafts.** If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, we may return the item or pay it, as described below. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one review of the account required. We do not have to notify you if your account does not have sufficient available funds in order to pay an item. Your account may be subject to a charge for each item regardless of whether we pay or return the item.

If we offer standard overdraft services, this service allows us to authorize payment for the following types of transactions regardless of whether your share or deposit account has sufficient funds: (1) share drafts/checks and other transactions made using your checking account, except as otherwise described below; (2) automatic bill payments; (3) ACH transactions. For ATM and one-time debit card transactions, you must affirmatively consent to such coverage. Without your consent, the Credit Union may not authorize and pay an ATM or one-time debit card transaction that will result in insufficient funds in your account. If you have established a service linking your share or deposit account with other individual or joint accounts, you authorize us to transfer funds from another account of yours to cover an insufficient item, including transfers from a share or deposit account, an overdraft line-of-credit account, or other account you so designate. Services and fees for these transactions are shown in the document the Credit Union uses to capture your affirmative consent and the Schedule of Fees and Charges.

Except as otherwise agreed in writing, if we exercise our right to use our discretion to pay such items that result in an insufficiency of funds in your account, we do not agree to pay them in the future and may discontinue coverage at any time without notice. If we pay these items or impose a fee that results in insufficient funds in your account, you agree to pay the insufficient amount, including the fee assessed by us, in accordance with our standard overdraft services or any other service you may have authorized with us, or if you do not have such protections with us, in accordance with any overdraft payment policy we have, as applicable.

**b. Order of Payments.** Checks, drafts, transactions, and other items will be paid as presented. The order in which we process checks, drafts, or items, and execute other transactions on your account may affect the total amount of overdraft fees that may be charged to your account. Please contact us if you have questions about how we pay checks or drafts and process transfers and withdrawals.

**15. POSTDATED AND STALEDATED CHECKS OR DRAFTS -** You agree not to issue any check or draft that is payable on a future date (postdated). If you do issue a check or draft that is postdated and we pay it before that date, you agree that we shall have no liability to you for such payment. You agree not to deposit checks, drafts, or other items before they are properly payable. We are not obligated to pay any check or draft drawn on your account that is presented more than six (6) months past its date.

**16. STOP PAYMENT ORDERS -**

**a. Stop Payment Order Request.** Any owner may request a stop payment order on any check or draft drawn on the owner's account. To be binding, the order must be in writing, dated and signed, and must accurately describe the check or draft, including the exact account number, the check or draft number, and the exact amount of the check or draft. This exact information is necessary for the Credit Union's computer to identify the check or draft. If we receive incorrect or incomplete information, we will not be responsible for failing to stop payment on the check or draft. In addition, we must receive sufficient advance notice of the stop payment order to allow us a reasonable opportunity to act on it. If we recredit your account after paying a check or draft over a valid and timely stop payment order, you agree to sign a statement describing the dispute with the payee, to assign to us all of your rights against the payee or other holders of the check or draft, and to assist us in any legal action.

**b.  Duration of Order.** Oral stop payment orders for check or drafts will lapse within 14 calendar days unless confirmed in writing within that time. Written stop payment orders for checks or drafts are effective for six (6) months and may be renewed for additional six (6) month periods by requesting in writing that the stop payment order be renewed within a period during which the stop payment order is effective. We are not required to notify you when a stop payment order expires.

**c.  Liability.** Fees for stop payment orders are set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges.  You may not stop payment on any certified check, cashier's check, teller's check, or any other check, draft, or payment guaranteed by us. Although payment of an item may be stopped, you may remain liable to any item holder, including us. You agree to indemnify and hold the Credit Union harmless from all costs, including attorney's fees, damages, or claims related to our refusing payment of an item, including claims of any joint account owner, payee, or endorsee in failing to stop payment of an item as a result of incorrect information provided by you.

**17. CREDIT UNION LIABILITY -** If we do not properly complete a transaction according to this Agreement, we will be liable for your losses or damages not to exceed the amount of the transaction, except as otherwise provided by law. We will not be liable if: (1) your account contains insufficient funds for the transaction; (2) circumstances beyond our control prevent the transaction; (3) your loss is caused by your or another financial institution's negligence; or (4) your account funds are subject to legal process or other claim. We will not be liable for consequential damages, except liability for wrongful dishonor. We exercise ordinary care if our actions or nonactions are consistent with applicable state law, Federal Reserve regulations and operating letters, clearinghouse rules, and general financial institution practices followed in the area we serve. You grant us the right, in making payments of deposited funds, to rely exclusively on the form of the account and the terms of this Agreement. Any conflict regarding what you and our employees say or write will be resolved by reference to this Agreement.

**18. CHECKS OR DRAFTS PRESENTED FOR PAYMENT IN PERSON -** We may refuse to accept any check or draft drawn on your account that is presented for payment in person. Such refusal shall not constitute a wrongful dishonor of the check or draft, and we shall have no liability for refusing payment. If we agree to cash a check or draft that is presented for payment in person, we may require the presenter to pay a fee.  Any applicable check or draft cashing fees are stated in the Schedule of Fees and Charges.

**19. REMOTELY CREATED CHECKS OR DRAFTS -** For purposes of this paragraph, "account" means a transaction account, credit account, or any other account on which checks or drafts may be drawn. A remotely created check or draft is a check or draft created by someone other than the person on whose account the check or draft is drawn. A remotely created check or draft is generally created by a third party payee as authorized by the owner of the account on which the check or draft is drawn. Authorization is usually made over the telephone or through on-line communication. The owner of the account does not sign a remotely created check or draft. In place of the owner's signature, the remotely created check or draft usually bears a statement that the owner authorized the check or draft or bears the owner's printed or typed name. If you authorize a third party to draw a remotely created check or draft against your account, you may not later revoke or change your authorization. It is your responsibility to resolve any authorization issues directly with the third party. We are not required to credit your account and may charge against your account any remotely created check or draft for which the third party has proof of your authorization.

**20. PLEDGE/STATUTORY LIEN -** Unless prohibited by law, you pledge and grant as security for all obligations you may have now or in the future, except obligations secured by your principal residence, all shares and dividends and all deposits and interest, if any, in all accounts you have with us now and in the future. If you pledge a specific dollar amount in your account(s) for a loan, we will freeze the funds in your account(s) to the extent of the outstanding balance of the loan or, if greater, the amount of the pledge if the loan is a revolving loan. Otherwise, funds in your pledged account(s) may be withdrawn unless you are in default. Federal or state law (depending upon whether we have a federal or state charter) gives us a lien on all shares and dividends and all deposits and interest, if any, in accounts you have with us now and in the future. Except as limited by federal or state law, the statutory lien gives us the right to apply the balance of all your accounts to any obligation on which you are in default. After you are in default, we may exercise our statutory lien rights without further notice to you.

**Your pledge and our statutory lien rights will allow us to apply the funds in your account(s) to what you owe when you are in default, except as limited by federal or state law.** If we do not apply the funds in your account(s) to satisfy your obligation, we may place an administrative freeze on your account(s) in order to protect our statutory lien rights and may apply the funds in your account(s) to the amount you owe us at a later time. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under federal or state law if given as security. By not enforcing our right to apply funds in your account to your obligations that are in default, we do not waive our right to enforce these rights at a later time.

**21. LEGAL PROCESS -** If any legal action is brought against your account, we may pay out funds according to the terms of the action or refuse any payout until the dispute is resolved, as permitted by law. Any expenses or attorney fees we incur responding to legal process may be charged against your account without notice, unless prohibited by law. Any legal process against your account is subject to our lien and security interest.

**22. ACCOUNT INFORMATION -** Upon request, we will give you the name and address of each agency from which we obtain a credit report regarding your account. We agree not to disclose account information to third parties except when: (1) it is necessary to complete a transaction; (2) the third party seeks to verify the existence or condition of your account in accordance with applicable law; (3) such disclosure complies with the law or a government agency or court order; or (4) you give us written permission.

**23. NOTICES -**

**a.  Name or Address Changes.** You are responsible for notifying us of any name or address change. The Credit Union is only required to attempt to communicate with you at the most recent address you have provided to us. We may require all name and address changes to be provided in writing. If we attempt to locate you, we may impose a service fee as set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges.

**b.  Notice of Amendments.** Except as prohibited by applicable law, we may change the terms of this Agreement at any time. We will notify you of any change in terms, rates, or fees as required by law. We reserve the right to waive any terms of this Agreement. Any such waiver shall not affect our right to future enforcement.

**c.  Effect of Notice.** Any written notice you give us is effective when we receive it. Any written notice we give to you is effective when it is deposited in the U.S. mail, postage prepaid, and addressed to you at your statement mailing address. Notice to any account owner is considered notice to all account owners.

**d.  Electronic Notices.** If you have agreed to receive notices electronically, we may send you notices electronically and discontinue mailing paper notices to you until you notify us that you wish to reinstate receiving paper notices.

**24. TAXPAYER IDENTIFICATION NUMBER AND BACKUP WITHHOLDING -** Your failure to furnish a correct Taxpayer Identification Number (TIN) or meet other requirements may result in backup withholding. If your account is subject to backup withholding, we must withhold and pay to the Internal Revenue Service (IRS) a percentage of dividends, interest, and certain other payments. If you fail to provide your TIN, we may suspend opening your account.

**25. STATEMENTS -**

**a. Contents.** If we provide a periodic statement for your account, you will receive a periodic statement of transactions and activity on your account during the statement period as required by applicable law. If a periodic statement is provided, you agree that only one (1) statement is necessary for joint accounts. For share draft or checking accounts, you understand and agree that your original check or draft, when paid, becomes property of the Credit Union and may not be returned to you, but copies of the check or draft may be retained by us or by payable-through financial institutions and may be made available upon your request. You understand and agree that statements are made available to you on the date they are sent to you. You also understand and agree that checks, drafts, or copies thereof are made available to you on the date the statement is sent to you, even if the checks or drafts do not accompany the statement.

**b. Examination.** You are responsible for promptly examining each statement upon receiving it and reporting any irregularities to us. If you fail to report any irregularities such as forged, altered, unauthorized, unsigned, or otherwise fraudulent items drawn on your account, erroneous payments or transactions, or other discrepancies reflected on your statement within 33 days of the date we sent the statement to you, we will not be responsible for your loss. We also will not be liable for any items that are forged or altered in a manner not detectable by a reasonable person, including the unauthorized use of a facsimile signature machine.

**c. Notice to Credit Union.** You agree that the Credit Union's retention of checks or drafts does not alter or waive your responsibility to examine your statements or the time limit for notifying us of any errors. The statement will be considered correct for all purposes, and we will not be liable for any payment made or charge to your account unless you notify us in writing within the above time limit for notifying us of any errors. If you fail to receive a periodic statement, you agree to notify us within 14 days of the time you regularly receive a statement.

**26. INACTIVE ACCOUNTS -** If your account falls below any applicable minimum balance and you have not made any transactions over a period specified in the Truth-in-Savings Disclosure or Schedule of Fees and Charges, we may classify your account as inactive or dormant. Unless prohibited by applicable law, we may charge a service fee, as set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges, for processing your inactive account. If we impose a fee, we will notify you, as required by law, at your last known address. You authorize us to transfer funds from another account of yours to cover any service fees, if applicable. To the extent allowed by law, we reserve the right to transfer the account funds to an account payable and to suspend any further account statements. If a deposit or withdrawal has not been made on the account and we have had no other sufficient contact with you within the period specified by state law, the account will be presumed to be abandoned. Funds in abandoned accounts will be reported and remitted in accordance with state law. Once funds have been turned over to the state, we have no further liability to you for such funds, and if you choose to reclaim such funds, you must apply to the appropriate state agency.

**27. SPECIAL ACCOUNT INSTRUCTIONS -** You may request that we facilitate certain trust, will, or court-ordered account arrangements. However, because we do not give legal advice, we cannot counsel you as to which account arrangement most appropriately meets the specific requirements of your trust, will, or court order. If you ask us to follow any instructions that we believe might expose us to claims, lawsuits, expenses, liabilities, or damages, whether directly or indirectly, we may refuse to follow your instructions or may require you to indemnify us or post a bond or provide us with other protection. We may require that account changes requested by you, or any account owner, such as adding or closing an account or service, be evidenced by a signed Account Change Card or other document which evidences a change to an account and accepted by us.

**28. TERMINATION OF ACCOUNT -** We may terminate your account at any time without notice to you or may require you to close your account and apply for a new account if: (1) there is a change in owners or authorized signers; (2) there has been a forgery or fraud reported or committed involving your account; (3) there is a dispute as to the ownership of the account or of the funds in the account; (4) any checks or drafts are lost or stolen; (5) there are excessive returned unpaid items not covered by an overdraft protection plan; (6) there has been any misrepresentation or any other abuse of any of your accounts; or (7) we reasonably deem it necessary to prevent a loss to us. You may terminate an individual account by giving written notice. We reserve the right to require the consent of all owners to terminate a joint account. We are not responsible for payment of any check, draft, withdrawal, transaction, or other item after your account is terminated; however, if we pay an item after termination, you agree to reimburse us.

**29. TERMINATION OF MEMBERSHIP -** You may terminate your membership by giving us written notice or by withdrawing your minimum required membership share(s), if any, and closing all your accounts. You may be denied services for causing a loss to the Credit Union, or you may be expelled for any reason as allowed by applicable law.

**30. DEATH OF ACCOUNT OWNER -** We may continue to honor all transfer orders, withdrawals, deposits, and other transactions on an account until we know of a member's death. Once we know of a member's death, we may pay checks or drafts or honor other payments or transfer orders authorized by the deceased member for a period of ten (10) days after that date unless we receive instructions from any person claiming an interest in the account to stop payment on the checks, drafts, or other items. We may require anyone claiming a deceased owner's account funds to indemnify us for any losses resulting from our honoring that claim. This Agreement will be binding upon any heirs or legal representatives of any account owner.

**31. UNLAWFUL INTERNET GAMBLING AND OTHER ILLEGAL ACTIVITIES -** You agree that you are not engaged in unlawful Internet gambling or any other illegal activity. You agree that you will not use any of your accounts, access devices or services for unlawful Internet gambling or other illegal activities. We may terminate your account relationship if you engage in unlawful Internet gambling or other illegal activities.

**32. SEVERABILITY -** If a court holds any portion of this Agreement to be invalid or unenforceable, the remainder of this Agreement shall not be invalid or unenforceable and will continue in full force and effect. All headings are intended for reference only and are not to be construed as part of the Agreement.

**33. ENFORCEMENT -** You are liable to us for any losses, costs, or expenses we incur resulting from your failure to follow this Agreement. You authorize us to deduct any such losses, costs, or expenses from your account without prior notice to you. If we bring a legal action to collect any amount due under or to enforce this Agreement, we shall be entitled, subject to applicable law, to payment of reasonable attorney's fees and costs, including fees on any appeal, bankruptcy proceedings, and any postjudgment collection actions.

**34. GOVERNING LAW -** This Agreement is governed by the Credit Union's bylaws, federal laws and regulations, the laws, including applicable principles of contract law, and regulations of the state in which the Credit Union's main office is located, and local clearinghouse rules, as amended from time to time. As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county in which the Credit Union is located.

**35. NEGATIVE INFORMATION NOTICE -** We may report information about your loan, share, or deposit accounts to credit bureaus. Late payments, missed payments, or other defaults on your accounts may be reflected in your credit report.

# FUNDS AVAILABILITY POLICY DISCLOSURE

This Disclosure describes your ability to withdraw funds at Credit Union ONE. It only applies to the availability of funds in transaction accounts. The Credit Union reserves the right to delay the availability of funds deposited to accounts that are not transaction accounts for periods longer than those disclosed in this policy. Please ask us if you have a question about which accounts are affected by this policy.

**1. GENERAL POLICY — our policy is to make funds available from deposits you make as follows:**

a) Funds from your cash and check deposits made in person to an employee of Credit Union ONE will be available to you on the same day that we receive your deposit.  In some cases, we will not make all of the funds from checks that you deposit in person to an employee of the credit union available to you on the same day that we receive your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $200.00 of your deposit will be available on the day of your deposit. If we are not going to make all of the funds from your deposit available on the same day, we will notify you at the time you make your deposit.  We will also tell you when the funds will be available.  If we decide to take this action after you have left the premises, we will mail you the notice by the next business day after we receive your notice.  If you will need the funds from a deposit right away, you should ask us when the funds will be available.

b) Funds deposited via mail will be made available to you on the same day we receive your deposit. In some cases, we will not make all of the funds from checks that you deposit via mail available to you on the same day that we receive your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $200.00 of your deposit will be available on the day of your deposit. If we are not going to make all of the funds from your deposit available on the same day, we will mail you the notice by the next business day after we receive your deposit.  If you will need the funds from a deposit right away, you should ask us when the funds will be available.

c) Funds deposited via the night depository will made available to you on the day we receive your deposit.  Deposits are considered received on a day the branch is open as of the time listed on the night depository, or 10:00am in the event the night depository does not have a time listed.  Funds deposited into a night depository after the cutoff time at a branch on a day when the branch is open for business or on a day when the branch is closed for business will be considered received on the next day the branch is open for business.  In some cases, we will not make all of the funds from checks that you deposit via night depository available to you on the same day that we receive your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $200.00 of your deposit will be available on the day of your deposit. If we are not going to make all of the funds from your deposit available on the same day, we will mail you the notice by the next business day after we receive your deposit.  If you will need the funds from a deposit right away, you should ask us when the funds will be available.

d) Electronic direct deposits will be available on the day we receive the deposit.

e) Funds deposited by check to an automated teller machine (ATM) will be available to you on the second business day after the day of your deposit; however the first $200 will be made available on the same day you make your deposit. In addition, U.S. Treasury checks that are deposited to the account of the named payee at an ATM we own and operate will be available on the next business day you make your deposit.  If we are not going to make all of the funds from your deposit at an ATM as described in this section available, we will mail you the notice by the next business day after we receive your deposit.

    I. Funds deposited by cash to an envelope-free ATM will be made available to you on the same day that we receive the deposit.

    II. Funds deposited by cash at a non-proprietary ATM via an envelope deposit will be made available to you on the second business day after the day of your deposit.

    III. ATMs we own and operate are identified as Credit Union ONE machines.

f) Funds from the following types of deposits made at a shared branch will be made available to you on the same day you make your deposit:  cash; U.S. Treasury checks; Federal Reserve or Federal Home Loan Bank checks; U.S. Postal Service money orders; state or local government checks where the shared branch outlet is located in the same state as the payor of the check; and computer-generated payroll checks of $2,500 or less.  Payroll check availability is subject to paystub verification of the check number and net pay. Funds from all other checks deposited at a shared branch will be available on the second business day after the day of your deposit; however, the first $200 of such deposits will be made available to you on the same day you make your deposit.

g) Funds you deposit remotely via remote deposit capture will be available to you on the second business day after the day of your deposit; however, the first $200 will be made available to you on the same day you make your deposit.  Please refer to separate Remote Deposit Capture terms and conditions.

h) Funds deposited by check to an interactive teller machine (ITM) will be available to you on the second business day after the day of your deposit; however the first $200 will be made available on the same day you make your deposit. In addition, U.S. Treasury checks that are deposited to the account of the named payee at an ITM we own and operate will be available on the next business day following the day you make your deposit.  If we are not going to make all of the funds from your deposit at

© CUNA Mutual Group 2008,10,11 All Rights Reserved            DMUL4 (114521)-e

an ITM available **as described in this section**, we will provide you with a notice by the next business day after we receive the deposit.

Once funds are available, you can withdraw the funds in cash and we will use the funds to pay checks that you have written. For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit before close of business on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after the close of business or on a business day we are not open, we will consider that the deposit was made on the next business day we are open.

**2. HOLDS ON OTHER FUNDS —** if we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it. If we accept for deposit a check that is drawn on another financial institution, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this Disclosure for the type of check that you deposited.

**3. LONGER DELAYS MAY APPLY —** we may delay your ability to withdraw funds deposited by check into your account an additional number of days for these reasons:

- We believe a check you deposit will not be paid.

- You deposit checks totaling more than $5,000.00 on any one (1) day.

- You redeposit a check that has been returned unpaid.

- You have overdrawn your account repeatedly in the last six (6) months.

- There is an emergency, such as failure of communications or computer equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

**4.   SPECIAL RULES FOR NEW ACCOUNTS —** If you are a new member, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $5,000.00 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the same business day that we receive your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,000.00 may not be available until up to the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000.00 will not be available until the second business day after the day of your deposit. Funds from all other check deposits will be available on the ninth business day after the day of your deposit.

**5. FOREIGN CHECKS —** Checks drawn on financial institutions located outside the U.S. (foreign checks) cannot be processed the same as checks drawn on U.S. financial institutions. Foreign checks are exempt from the policies outlined in this Disclosure. Generally, the availability of funds for deposits of foreign checks will be delayed for the time it takes us to collect the funds from the financial institution upon which it is drawn.

© CUNA Mutual Group 2008.10,11 All Rights Reserved

# ELECTRONIC FUND TRANSFERS AGREEMENT AND DISCLOSURE

This Electronic Fund Transfers Agreement and Disclosure is the contract which covers your and our rights and responsibilities concerning the electronic fund transfers (EFT) services offered to you by Credit Union ONE ("Credit Union"). In this Agreement, the words "you," "your," and "yours" mean those who sign the application or account card as applicants, joint owners, or any authorized users. The words "we," "us," and "our" mean the Credit Union. The word "account" means any one (1) or more savings and checking accounts you have with the Credit Union. Electronic fund transfers are electronically initiated transfers of money from your account through the EFT services described below. By signing an application or account card for EFT services, signing your card, or using any service, each of you, jointly and severally, agree to the terms and conditions in this Agreement and any amendments for the EFT services offered. Furthermore, electronic fund transfers that meet the definition of remittance transfers are governed by 12 C.F.R. part 1005, subpart B—Requirements for remittance transfers, and consequently, terms of this agreement may vary for those types of transactions. A "remittance transfer" is an electronic transfer of funds of more than $15.00 which is requested by a sender and sent to a designated recipient in a foreign country by a remittance transfer provider. Terms applicable to such transactions may vary from those disclosed herein and will be disclosed to you at the time such services are requested and rendered in accordance with applicable law.

**1. EFT SERVICES —** If approved, you may conduct any one (1) or more of the EFT services offered by the Credit Union.

**a. Platinum Mastercard Debit Card.** If approved, you may use your Mastercard® card to purchase goods and services from participating merchants. However, you may not use your card to initiate any type of electronic gambling transactions through the Internet. If you wish to pay for goods or services over the Internet, you may be required to provide card number security information before you will be permitted to complete the transaction. You agree that you will not use your card for any transaction that is illegal under applicable federal, state, or local law. Funds to cover your card purchases will be deducted from your checking account. For ATM and one-time debit card transactions, you must consent to the Credit Union's overdraft protection plan in order for the transaction amount to be covered under the plan. Without your consent, the Credit Union may not authorize and pay an overdraft resulting from these types of transactions. Services and fees for overdrafts are shown in the document the Credit Union uses to capture the member's opt-in choice for overdraft protection and the Schedule of Fees and Charges.

For other types of transactions, if the balance in your account is not sufficient to pay the transaction amount, the Credit Union may pay the amount and treat the transaction as a request to transfer funds from other deposit accounts, approved overdraft protection accounts, or loan accounts that you have established with the Credit Union. If you initiate a transaction that overdraws your account, you agree to make immediate payment of any overdrafts together with any service charges to the Credit Union. In the event of repeated overdrafts, the Credit Union may terminate all services under this Agreement. You may use your card and personal identification number (PIN) in ATMs of the Credit Union, CO-OP and NYCE networks, and such other machines or facilities as the Credit Union may designate.

At the present time, you may also use your card to:

- Make deposits to your savings, checking, loan, and money market accounts.
- Withdraw funds from your savings, checking, and money market accounts.
- Transfer funds from your savings, checking, and money market accounts.
- Obtain balance information for your savings, checking, loan, and money market accounts.
- Make loan payments from your savings, checking, and money market accounts.
- Access your Freedom Access accounts.
- Connect your card to a mobile device.
- Make point-of-sale (POS) transactions with your card and personal identification number (PIN) to purchase goods or services at merchants that accept Mastercard.
- Order goods or services by mail or telephone from places that accept Mastercard.

The following limitations on Platinum Mastercard Debit Card transactions may apply:

- You may make 25 Platinum Mastercard Debit Card purchases per day.
- You may purchase up to a maximum of $5,010.00 per day.
- You may make 25 cash withdrawals in any one (1) day from an ATM machine.
- You may withdraw up to a maximum of $510.00 in any one (1) day from an ATM machine, if there are sufficient funds in your account.
- You may purchase up to a maximum of $5,010.00 from POS terminals per day, if there are sufficient funds in your account.
- For security purposes, there are other limits on the frequency and amount of transfers available at ATMs.
- You may transfer up to the available balance in your accounts at the time of the transfer.
- See Section 2 for transfer limitations that may apply to these transactions.

© CUNA Mutual Group 2008-10, 12-14; 17 All Rights Reserved

DMUM6 (51002B)-e

**Card Information Updates and Authorizations.** If you have authorized a merchant to bill charges to your card on a recurring basis, it is your responsibility to notify the merchant in the event your card is replaced, your card information (such as card number and expiration date) changes, or the account associated with your card is closed. However, if your card is replaced or card information changes, you authorize us, without obligation on our part, to provide the updated card information to the merchant in order to permit the merchant to bill recurring charges to the card. You authorize us to apply such recurring charges to the card until you notify us that you have revoked authorization for the charges to your card.

Your card is automatically enrolled in an information updating service. Through this service, your updated card information (such as card number and expiration date) may be shared with participating merchants to facilitate continued recurring charges. Updates are not guaranteed before your next payment to a merchant is due. You are responsible for making direct payment until recurring charges resume. To revoke your authorization allowing us to provide updated card information to a merchant, please contact us.

**b.   24 Hour Phone Banking.** If we approve 24 Hour Phone Banking for your accounts, a separate personal identification number (PIN) will be assigned to you. You must use your personal identification number (PIN) along with your account number to access your accounts. At the present time, you may use 24 Hour Phone Banking to:

- Withdraw funds from your savings, checking, and money market accounts.
- Transfer funds from your savings, checking, and money market accounts.
- Obtain balance information for your savings, checking, loan, IRA, money market, and certificate accounts.
- Make loan payments from your savings, checking, and money market accounts.
- Access your Freedom Access account.
- Determine if a particular item has cleared.
- Verify the last date and amount of your payroll deposit.

Your accounts can be accessed under 24 Hour Phone Banking via a touch-tone telephone only. 24 Hour Phone Banking service will be available for your convenience 24 hours per day. This service may be interrupted for a short time each day for data processing.

The following limitations on 24 Hour Phone Banking transactions may apply:

- There is no limit to the number of inquiries, transfers, or withdrawal requests you may make in any one (1) day.
- The maximum withdrawal or transfer amount is $50,000.00 per day and no transfer or withdrawal may exceed the available funds in your account.
- See Section 2 for transfer limitations that may apply to these transactions.

The Credit Union reserves the right to refuse any transaction which would draw upon insufficient funds, exceed a credit limit, lower an account below a required balance, or otherwise require us to increase our required reserve on the account. All checks are payable to you as a primary member and will be mailed to your address of record. The Credit Union may set other limits on the amount of any transaction, and you will be notified of those limits. The Credit Union may refuse to honor any transaction for which you do not have sufficient available verified funds. The service will discontinue if no transaction is entered after numerous unsuccessful attempts to enter a transaction and there may be limits on the duration of each telephone call.

**c.   Preauthorized EFTs.**

- **Direct Deposit.** Upon instruction of (i) your employer, (ii) the Treasury Department or (iii) other financial institutions, the Credit Union will accept direct deposits of your paycheck or federal recurring payments, such as Social Security, to your savings, checking and/or money market account.
- **Preauthorized Debits.** Upon instruction, we will pay certain recurring transactions from your savings, checking, and money market account.
- See Section 2 for transfer limitations that may apply to these transactions.
- **Stop Payment Rights.** If you have arranged in advance to make electronic fund transfers out of your account(s) for money you owe others, you may stop payment on preauthorized transfers from your account. You must notify us orally or in writing at any time up to three (3) business days before the scheduled date of the transfer. We may require written confirmation of the stop payment order to be made within 14 days of any oral notification. If we do not receive the written confirmation, the oral stop payment order shall cease to be binding 14 days after it has been made. A stop payment request may apply to a single transfer, multiple transfers, or all future transfers as directed by you, and will remain in effect unless you withdraw your request or all transfers subject to the request have been returned.
- **Notice of Varying Amounts.** If these regular payments may vary in amount, the person you are going to pay is required to tell you, ten (10) days before each payment, when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.
- **Liability for Failure to Stop Payment of Preauthorized Transfers.** If you order us to stop payment of a preauthorized transfer three (3) business days or more before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

**d.   Electronic Check Conversion/Electronic Returned Check Fees.** If you pay for purchases or bills with a check or draft, you may authorize your check or draft to be converted to an electronic fund transfer. You may also authorize merchants or other payees to electronically debit your account for returned check fees. You are considered to have authorized these electronic fund transfers if you complete the transaction after being told (orally or by a notice posted or sent to you) that the transfer may be processed electronically or if you sign a written authorization.

**e.   Online Banking.** If Online Banking is activated for your account(s), you will be required to use secure login information to access the account(s). At the present time, you may use Online Banking to:

- Withdraw funds from your savings, checking, and money market accounts.
- Transfer funds from your savings, checking, and money market accounts.
- Obtain balance information for your savings, checking, loan, money market, and certificate accounts.
- Make loan payments from your savings, checking, and money market accounts.
- Access your Freedom Access accounts.
- Determine if a particular item has cleared.
- Obtain tax information on amounts earned on savings and checking accounts or interest paid on loan accounts.
- Verify the last date and amount of your payroll deposit.
- Make bill payments to preauthorized creditors.

Your accounts can be accessed under Online Banking via personal computer. Online Banking will be available for your convenience 24 hours per day. This service may be interrupted for a short time each day for data processing. We reserve the right to refuse any transaction which would draw upon insufficient funds, exceed a credit limit, lower an account below a required balance, or otherwise require us to increase our required reserve on the account. All checks are payable to you as a primary member and will be mailed to your address of record. We may set other limits on the amount of any transaction, and you will be notified of those limits. We may refuse to honor any transaction for which you do not have sufficient available verified funds. The service will discontinue if no transaction is entered after numerous unsuccessful attempts to enter a transaction and there may be limits on the duration of each access.

The following limitations on Online Banking transactions may apply:

- There is no limit to the number of inquiries, transfers, or withdrawal requests you may make in any one (1) day.
- The maximum withdrawal or transfer amount is $50,000.00 per day, and no transfer or withdrawal may exceed the available funds in your account.
- See Section 2 for transfer limitations that may apply to these transactions.

**f.   Online Bill Pay.** We will process bill payment transfer requests only to those creditors the Credit Union has designated in the User Instructions and such creditors as you authorize and for whom the Credit Union has the proper vendor code number. We will not process any bill payment transfer if the required transaction information is incomplete.

We will withdraw the designated funds from your checking account for bill payment transfer by the designated cutoff time on the date you schedule for payment. We will process your bill payment transfer within a designated number of days before the date you schedule for payment. You must allow sufficient time for vendors to process your payment after they receive a transfer from us. Please leave as much time as though you were sending your payment by mail. We cannot guarantee the time that any payment will be credited to your account by the vendor.

The following limitations on Online Bill Pay transactions may apply:

- The maximum amount of bill payments each day is $9,999.99, if there are sufficient funds in your account.
- Maximum per transaction of $9,999.99.

**2.   TRANSFER LIMITATIONS —** For all savings and money market accounts, you may make no more than six (6) transfers and withdrawals from your account to another account of yours or to a third party in any month by means of a preauthorized, automatic, or Internet transfer, by telephonic order or instruction, or by check, draft, debit card or similar order. If you exceed these limitations, your account may be subject to a fee or be closed.

**3.   CONDITIONS OF EFT SERVICES —**

**a.   Ownership of Cards.** Any card or other device which we supply to you is our property and must be returned to us, or to any person whom we authorize to act as our agent, or to any person who is authorized to honor the card, immediately according to instructions. The card may be repossessed at any time at our sole discretion without demand or notice. You cannot transfer your card or account to another person.

**b.   Honoring the Card.** Neither we nor merchants authorized to honor the card will be responsible for the failure or refusal to honor the card or any other device we supply to you. If a merchant agrees to give you a refund or adjustment, you agree to accept a credit to your account in lieu of a cash refund.

**c.   Foreign Transactions.**

**Mastercard.** Purchases and cash withdrawals made in foreign currencies will be debited from your account in U.S. dollars. The exchange rate used to convert foreign currency transactions to U.S. dollars is either a government-mandated exchange rate or a wholesale exchange rate and is selected by Mastercard. The rate Mastercard uses for a particular transaction is the rate Mastercard selects for the applicable currency on the day the transaction is processed. This rate may differ from the rate applicable on the date the transaction occurred or was posted to your account.

A fee of up to 1.00% will be charged on all transactions completed outside of the United States, where the cardholder's country code differs from the merchant's country code. All fees are calculated based on the transaction amount after it is converted to U.S. dollars. These fees are charged except where excluded.

**d.   Security of Access Code.** You may use one (1) or more access codes with your electronic fund transfers. The access codes issued to you are for your security purposes. Any access codes issued to you are confidential and should not be disclosed to third parties or recorded on or with the card. You are responsible for safekeeping your access codes. You agree not to disclose or otherwise make your access codes available to anyone not authorized to sign on your accounts. If you authorize anyone to use your access codes, that authority shall continue until you specifically revoke such authority by notifying the Credit Union. You understand that any joint owner you authorize to use an access code may withdraw or transfer funds from any of your accounts. If you fail to maintain the security of these access codes and the Credit Union suffers a loss, we may terminate your EFT services immediately.

**e.   Joint Accounts.** If any of your accounts accessed under this Agreement are joint accounts, all joint owners, including any authorized users, shall be bound by this Agreement and, alone and together, shall be responsible for all EFT transactions to or from any savings and checking or loan accounts as provided in this Agreement. Each joint account owner, without the consent of any other account owner, may, and is hereby authorized by every other joint account owner, make any transaction permitted under this Agreement. Each joint account owner is authorized to act for the other account owners, and the Credit Union may accept orders and instructions regarding any EFT transaction on any account from any joint account owner.

**4.   FEES AND CHARGES —** There are certain fees and charges for EFT services. For a current listing of all applicable fees, see our current Schedule of Fees and Charges that was provided to you at the time you applied for or requested these electronic services. From time to time, the charges may be changed. We will notify you of any changes as required by applicable law.

If you use an ATM not operated by us, you may be charged a fee by the ATM operator and by any international, national, regional, or local network used in processing the transaction (and you may be charged a fee for a balance inquiry even if you do not complete a funds transfer). The ATM surcharge will be debited from your account if you elect to complete the transaction or continue with the balance inquiry.

**5.   MEMBER LIABILITY —** You are responsible for all transactions you authorize using your EFT services under this Agreement. If you permit someone else to use an EFT service, your card or your access code, you are responsible for any transactions they authorize or conduct on any of your accounts. However, TELL US AT ONCE if you believe your card and/or access code has been lost or stolen, if you believe someone has used your card or access code or otherwise accessed your accounts without your permission, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line-of-credit).

You are not liable for an unauthorized Mastercard debit card transaction if you can demonstrate that you have exercised reasonable care in protecting your card or access code from loss or theft and, upon discovering the loss or theft, you promptly report the loss or theft to us.

For all other EFT transactions involving access devices, your liability for unauthorized transactions is determined as follows. If you tell us within two (2) business days after you learn of the loss or theft of your card or access code, you can lose no more than $50.00 if someone used your card or access code without your permission. If you do NOT tell us within two (2) business days after you learn of the loss or theft of your card or access code and we can prove that we could have stopped someone from using your card or access code without your permission if you had told us, you could lose as much as $500.00.

Also, if your statement shows transfers that you did not make including those made by card, access code or other means, TELL US AT ONCE. If you do not tell us within 60 days after the statement was mailed to you, you may not get back any money lost after the 60 days if we can prove that we could have stopped someone from making the transfers if you had told us in time. If a good reason (such as a hospital stay) kept you from telling us, we will extend the time periods.

If you believe your card or access code has been lost or stolen or that someone has transferred or may transfer money from your accounts without your permission, call:

(800) 451-4292

or write to:

Credit Union ONE
400 E 9 Mile Road
Ferndale, MI 48220

You should also call the number or write to the address listed above if you believe a transfer has been made using the information from your check without your permission.

**6.   RIGHT TO RECEIVE DOCUMENTATION —**

**a.   Periodic Statements.** Transfers and withdrawals made through any debit card transactions, audio response transactions, preauthorized EFTs, online/PC transactions or bill payments you make will be recorded on your periodic statement. You will receive a statement monthly unless there is no transaction in a particular month. In any case, you will receive a statement at least quarterly.

**b.   Terminal Receipt.** You can get a receipt at the time you make any transaction (except inquiries) involving your account using an ATM and/or point-of-sale (POS) terminal.

**c.   Direct Deposit.** If you have arranged to have a direct deposit made to your account at least once every 60 days from the same source and you do not receive a receipt (such as a pay stub), you can find out whether or not the deposit has been made by calling (800) 451-4292. This does not apply to transactions occurring outside the United States.

**7.   ACCOUNT INFORMATION DISCLOSURE —** We will disclose information to third parties about your account or the transfers you make:

- As necessary to verify or complete a transaction;
- To verify the existence of your account upon the request of a third party;
- If your account is eligible for emergency cash and/or emergency card replacement services and you request such services, you agree that we may provide personal information about you and your account that is necessary to provide you with the requested service(s);
- To provide information to credit reporting agencies;
- To comply with government agency or court orders; or
- If you give us your written permission.

**8.   BUSINESS DAYS —** Our business days are Monday through Saturday, excluding holidays.

**9.   CREDIT UNION LIABILITY FOR FAILURE TO MAKE TRANSFERS —** If we do not complete a transfer to or from your account on time or in the correct amount according to our agreement with you, we may be liable for your losses or damages. However, we will not be liable for direct or consequential damages in the following events:

- If, through no fault of ours, there is not enough money in your accounts to complete the transaction, if any funds in your accounts necessary to complete the transaction are held as uncollected funds pursuant to our Funds Availability Policy Disclosure, or if the transaction involves a loan request exceeding your credit limit.
- If you used your card or access code in an incorrect manner.
- If the ATM where you are making the transfer does not have enough cash.
- If the ATM was not working properly and you knew about the problem when you started the transaction.
- If circumstances beyond our control (such as fire, flood, or power failure) prevent the transaction.
- If the money in your account is subject to legal process or other claim.
- If funds in your account are pledged as collateral or frozen because of a delinquent loan.
- If the error was caused by a system of any participating ATM network.
- If the electronic transfer is not completed as a result of your willful or negligent use of your card, access code, or any EFT facility for making such transfers.
- If the telephone or computer equipment you use to conduct audio response, online/PC, or mobile banking transactions is not working properly and you know or should have known about the breakdown when you started the transaction.
- If you have bill payment services, we can only confirm the amount, the participating merchant, and date of the bill payment transfer made by the Credit Union. For any other error or question you have involving the billing statement of the participating merchant, you must contact the merchant directly. We are not responsible for investigating such errors.
- Any other exceptions as established by the Credit Union.

**10.  NOTICES —** All notices from us will be effective when we have mailed them or delivered them to the appropriate address in the Credit Union's records. Notices from you will be effective when received by the Credit Union at the address specified in this Agreement. We reserve the right to change the terms and conditions upon which this service is offered. We will mail notice to you at least 21 days before the effective date of any change. Use of this service is subject to existing regulations governing the Credit Union account and any future changes to those regulations.

The following information is a list of safety precautions regarding the use of ATMs and night deposit facilities:

- Be aware of your surroundings, particularly at night.
- Consider having someone accompany you when the ATM or night deposit facility is used after dark.
- Close the entry door of any ATM facility equipped with a door.
- If another person is uncomfortably close to you at the time of your transaction, ask the person to step back before you complete your transaction. If it is after the regular hours of the financial institution and you are using an ATM, do not permit entrance to any person you do not know.
- Refrain from displaying your cash at the ATM or night deposit facility. As soon as your transaction is completed, place your money in your purse or wallet. Count the cash later in the safety of your car or home.
- If you notice anything suspicious at the ATM or night deposit facility, consider using another ATM or night deposit facility or coming back later. If you are in the middle of a transaction and you notice something suspicious, cancel the transaction, take your card or deposit envelope, and leave.
- If you are followed after making a transaction, go to the nearest public area where people are located.
- Do not write your personal identification number (PIN) or access code on your ATM card.
- Report all crimes to law enforcement officials immediately. If emergency assistance is needed, call the police from the nearest available public telephone.

**11.  BILLING ERRORS —** In case of errors or questions about electronic fund transfers from your savings and checking accounts or if you need more information about a transfer on the statement or receipt, telephone us at the following number or send us a written notice to the following address as soon as you can. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem appears. Call us at:

(800) 451-4292

or write to:

Credit Union ONE
400 E 9 Mile Road
Ferndale, MI 48220

- Tell us your name and account number.
- Describe the electronic transfer you are unsure about and explain, as clearly as you can, why you believe the Credit Union has made an error or why you need more information.
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 14 calendar days. If we ask you to put your complaint or question in writing and we do not receive it within 14 calendar days, we may not recredit your account.

We will determine whether an error has occurred within ten (10) business days after we hear from you and we will provisionally correct the error promptly, or if the correction is in an amount different than the alleged error, we will explain the reason for the difference. We may take up to 60 days to investigate your inquiry. Our provisional credit to your account, within ten (10) business days for the amount you think is in error, allows you the use of the money during the time it takes us to complete our investigation.

We will tell you the results in writing within three (3) business days after completing our investigation. If we decide that an error did not occur, we will send you a written explanation and we may charge back the corrected amount to your account within 60 days of our notice to you. If you request, we will provide you copies of documents (to the extent possible without violating other members' rights to privacy) relied upon to conclude that the error did not occur.

**12.  REVERSAL OF TRANSACTION —** We will reverse and recredit to your account an electronic fund transfer initiated by you for the purchase of goods or services from a third party if you dispute the purchase of goods or services of $50.00 or more. You must notify us within four (4) calendar days of the transaction that you have made a good faith attempt to resolve the dispute with the merchant, that you have returned or attempted to return the goods or services, and that you request a reversal of the transaction.

If your request is oral, we may require that you verify the request in writing within 14 calendar days following oral notice. If you do not provide us with written verification, we may reinstate the original transaction amount.

**13.  TERMINATION OF EFT SERVICES —** You may terminate this Agreement or any EFT service under this Agreement at any time by notifying us in writing and stopping your use of your card and any access code. You must return all cards to the Credit Union. You also agree to notify any participating merchants that authority to make bill payment transfers has been revoked. We may also terminate this Agreement at any time by notifying you orally or in writing. If we terminate this Agreement, we may notify any participating merchants making preauthorized debits or credits to any of your accounts that this Agreement has been terminated and that we will not accept any further preauthorized transaction instructions. We may also program our computer not to accept your card or access code for any EFT service. Whether you or the Credit Union

terminates this Agreement, the termination shall not affect your obligations under this Agreement for any electronic transactions made prior to termination.

**14.  GOVERNING LAW —** This Agreement is governed by the bylaws of the Credit Union, federal laws and regulations, the laws and regulations of the state of Michigan, and local clearinghouse rules, as amended from time to time. Any disputes regarding this Agreement shall be subject to the jurisdiction of the court of the county in which the Credit Union is located. The name and address of the governmental agency regulating the Credit Union is:

Department of Insurance and Financial Services
Office of Credit Unions
P.O. Box 30220
Lansing, MI 48909-7720

**15.  ENFORCEMENT —** You are liable to us for any losses, costs or expenses we incur resulting from your failure to follow this Agreement. You authorize us to deduct any such losses, costs or expenses from your account without prior notice to you. If we bring a legal action to collect any amount due under or to enforce this Agreement, we shall be entitled, subject to applicable law, to payment of reasonable attorney's fees and costs, including fees on any appeal, bankruptcy proceedings, and any postjudgment collection actions.


Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated.

# TRUTH-IN-SAVINGS DISCLOSURE

**LAST DIVIDEND DECLARATION DATE:**

The rates, fees and terms applicable to your account at the Credit Union are provided with this Truth-in-Savings Disclosure. The Credit Union may offer other rates for these accounts from time to time.

## RATE SCHEDULE

| ACCOUNT TYPE | DIVIDENDS | | | | BALANCE REQUIREMENTS | | | | ACCOUNT LIMITATIONS |
|---|---|---|---|---|---|---|---|---|---|
| | Dividend Rate / Annual Percentage Yield (APY) | Dividends Compounded | Dividends Credited | Dividend Period | Minimum Opening Deposit | Minimum Balance to Avoid a Service Fee | Minimum Balance to Earn the Stated APY | Balance Method to Calculate Dividends | |
| Membership Share | --- | --- | --- | --- | $1.00 | --- | --- | --- | --- |

## ACCOUNT DISCLOSURES

*Except as specifically described, the following disclosures apply to all of the accounts. All accounts described in this Truth-in-Savings Disclosure are share accounts.*

**1. RATE INFORMATION —** The annual percentage yield is a percentage rate that reflects the total amount of dividends to be paid on an account based on the dividend rate and frequency of compounding for an annual period. The dividend rates and annual percentage yields are the rates and yields as of the last dividend declaration date that is set forth in the Rate Schedule.

**2. NATURE OF DIVIDENDS —** Dividends are paid from current income and available earnings after required transfers to reserves at the end of the dividend period.

**3. DIVIDEND COMPOUNDING AND CREDITING —** The compounding and crediting frequency of dividends and the dividend period applicable to each account are stated in the Rate Schedule. The dividend period is the period of time at the end of which an account earns dividend credit. The dividend period begins on the first calendar day of the period and ends on the last calendar day of the period.

**4. ACCRUAL OF DIVIDENDS —** For all earning accounts, dividends will begin to accrue on noncash deposits (e.g. checks) on the business day you make the deposit to your account. If you close your account before accrued dividends are credited, you will not receive the accrued dividends.

**5. BALANCE INFORMATION —** To open any account, you must deposit or already have on deposit the minimum required share(s) in a Membership Share account. Some accounts may have additional minimum opening deposit requirements. The minimum balance requirements applicable to each account are set forth in the Rate Schedule.

**6. ACCOUNT LIMITATIONS —** For Membership Share accounts, no account limitations apply.

**7. FEES FOR OVERDRAWING ACCOUNTS —** Fees for overdrawing your account may be imposed on each check, draft, item, ATM transaction and one-time debit card transaction (if member has consented to overdraft protection plan for ATM and one-time debit card transactions), preauthorized automatic debit, telephone initiated withdrawal or any other electronic withdrawal or transfer transaction that is drawn on an insufficient available account balance. The entire balance in your account may not be available for withdrawal, transfer or paying a check, draft or item. You may consult the Funds Availability Policy Disclosure for information regarding the availability of funds in your account. Fees for overdrawing your account may be imposed for each overdraft, regardless of whether we pay or return the draft, item or transaction. If we have approved an overdraft protection limit for your account, such fees may reduce your approved limit. Please refer to the Fee Schedule for current fee information.

For ATM and one-time debit card transactions, you must consent to the Credit Union's overdraft protection plan in order for the transaction amount to be covered under the

plan. Without your consent, the Credit Union may not authorize and pay an overdraft resulting from these types of transactions. Services and fees for overdrafts are shown in the document the Credit Union uses to capture the member's opt-in choice for overdraft protection and the Schedule of Fees and Charges.

**8. MEMBERSHIP —** As a condition of membership, you must purchase and maintain the minimum required share(s) as set forth below.

Par Value of One Share   $1.00 (funded by the Credit Union)
Number of Shares Required          1

**9. RATES -** The rates and fees appearing with this Schedule are accurate as of the last dividend declaration date indicated on this Truth-in-Savings Disclosure. If you have any questions or require current rate and fee information on your accounts, please call the Credit Union.

**10. FEES —** See separate fee schedule for a listing of fees and charges applicable to your account(s).



Your savings federally insured to at least $250,000 and backed by the full faith and credit of the United States Government

**NCUA**

National Credit Union Administration, a U.S. Government Agency

© CUNA Mutual Group 1993, 2003, 07-10 All Rights Reserved

DMIJO3 (D30003 TSMS03)-e

# TRUTH-IN-SAVINGS DISCLOSURE

| EFFECTIVE DATE: |
|---|

| The rates, fees and terms applicable to your account at the Credit Union are provided with this Truth-in-Savings Disclosure.  The Credit Union may offer other rates for these accounts from time to time. |
|---|

| RATE SCHEDULE |
|---|

| | Interest Rate/ Annual Percentage Yield (APY) | Rate Type | Minimum Opening Deposit | Interest Compounded | Interest Credited | Additional Deposits | Withdrawals | Renewable |
|---|---|---|---|---|---|---|---|---|
| ☐ Certificate of Deposit<br>☐ IRA Certificate of Deposit | See Separate Rate Schedule | Fixed | $2,500.00 | Monthly | Monthly | Not Allowed | Allowed - See Transaction Limitations Section | Automatic |
| **3 Month** | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |
| **6 Month** | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |
| **12 Month** | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |
| **18 Month** | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |

© CUNA Mutual Group 1993, 2003, 07, 08, 10 All Rights Reserved

DMIJN3 (D31502)-e

## RATE SCHEDULE (continued)

| | Interest Rate/ Annual Percentage Yield (APY) | Rate Type | Minimum Opening Deposit | Interest Compounded | Interest Credited | Additional Deposits | Withdrawals | Renewable |
|---|---|---|---|---|---|---|---|---|
| 24 Month | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |
| 36 Month | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | See Separate Rate Schedule | Fixed | $2,500.00 | Monthly | Monthly | Not Allowed | Allowed - See Transaction Limitations Section | Automatic |
| 48 Month | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |
| 60 Month | | | | | | | | |
| $2,500.00 - $9,999.99 | | | | | | | | |
| $10,000.00 - $24,999.99 | | | | | | | | |
| $25,000.00 - $49,999.99 | | | | | | | | |
| $50,000.00 - $99,999.99 | | | | | | | | |
| $100,00.00 or greater | | | | | | | | |

## ACCOUNT DISCLOSURES

*Except as specifically described, the following disclosures apply to all of the accounts.*

**1. RATE INFORMATION —** The annual percentage yield is a percentage rate that reflects the total amount of interest to be paid on an account based on the interest rate and frequency of compounding for an annual period. For all accounts, the interest rate and annual percentage yield are fixed and will be in effect for the initial term of the account. The Certificate of Deposit and IRA Certificate of Deposit accounts are tiered rate accounts. The balance ranges and corresponding interest rates and annual percentage yields applicable to each tier are disclosed in a separate Rate Schedule. Once a particular range is met, the interest rate and annual percentage yield for that balance range will apply to the full balance of your account. For accounts subject to interest compounding, the annual percentage yield is based on an assumption that interest will remain on deposit until maturity. A withdrawal of interest will reduce earnings.

**2. INTEREST COMPOUNDING AND CREDITING —** The compounding and crediting frequency of interest applicable to each account is stated in the Rate Schedule. At your option, you may choose to have interest credited to your certificate account or paid to you by check. If you elect to have interest paid to you by check, compounding will not apply.

**3. BALANCE INFORMATION —** To open any account, you must deposit or already have on deposit the minimum required share(s) in a Membership Share account. Some accounts may have additional minimum opening deposit requirements. The minimum balance requirements applicable to each account are set forth in the Rate Schedule. For Certificate of Deposit and IRA Certificate of Deposit accounts, interest is calculated by the daily balance method which applies a daily periodic rate to the principal in the account each day.

**4. ACCRUAL OF INTEREST —** For Certificate of Deposit and IRA Certificate of Deposit accounts, interest

DMIJN3 (D31502)-e

will begin to accrue on noncash deposits (e.g. checks) on the business day you make the deposit to your account.

**5.   TRANSACTION LIMITATIONS —** For all accounts, your ability to make deposits to your account and any limitations on such transactions are stated in the Rate Schedule. After your account is opened, you may make withdrawals subject to the early withdrawal penalties stated below and your account will be closed. Partial withdrawals are not allowed.

**6.   MATURITY —** Your account will mature as stated on this Truth-in-Savings Disclosure or on your Account Receipt or Renewal Notice.

**7.   EARLY WITHDRAWAL PENALTY —** We may impose a penalty if you withdraw funds from your account before the maturity date.

**a.   Amount of Penalty.** For Certificate of Deposit and IRA Certificate of Deposit accounts, the amount of the early withdrawal penalty is based on the term of your account. The penalty schedule is as follows:

| | |
|---|---|
| Terms of 6 months or less | 30 days' interest |
| Terms of 12 months | 90 days' interest |
| Terms of longer than 12 months | 180 days' interest |

**b.   How the Penalty Works.** The penalty is calculated as a forfeiture of part of the interest that has been or would be earned on the account. It applies whether or not the interest has been earned. In other words, if the account has not yet earned enough interest or if the interest has already been paid, the penalty will be deducted from the principal.

**c.   Exceptions to Early Withdrawal Penalties.** At our option, we may pay the account before maturity without imposing an early withdrawal penalty under the following circumstances:

(i)   When an account owner dies or is determined legally incompetent by a court or other body of competent jurisdiction.

(ii)   Where the account is an Individual Retirement Account (IRA) and any portion is paid within seven (7) days after the establishment of the account; or where the account is a Keogh Plan (Keogh), provided that the depositor forfeits an amount at least equal to the simple interest earned in the amount withdrawn; or where the account is an IRA or Keogh and the owner attains age 59½ or becomes disabled.

**8.   RENEWAL POLICY —** The renewal policy for your accounts is stated in the Rate Schedule. For accounts that automatically renew for another term, you have a grace period of seven (7) days after maturity in which to withdraw funds in the account without being charged an early withdrawal penalty.

**9.   NONTRANSFERABLE/NONNEGOTIABLE —** Your account is nontransferable and nonnegotiable.

**10.   MEMBERSHIP —** As a condition of membership, you must purchase and maintain the minimum required share(s) as set forth below.

| | |
|---|---|
| Par Value of One Share | $1.00 (funded by the Credit Union) |
| Number of Shares Required | 1 |



Your savings federally insured to at least $250,000 and backed by the full faith and credit of the United States Government

**NCUA**

National Credit Union Administration, a U.S. Government Agency

# TRUTH-IN-SAVINGS DISCLOSURE

| EFFECTIVE DATE: |
|---|
| The rates, fees and terms applicable to your account at the Credit Union are provided with this Truth-in-Savings Disclosure. The Credit Union may offer other rates for these accounts from time to time. |

## RATE SCHEDULE

| ACCOUNT TYPE | Interest Rate/ Annual Percentage Yield (APY) | INTEREST | | BALANCE REQUIREMENTS | | | | ACCOUNT LIMITATIONS |
|---|---|---|---|---|---|---|---|---|
| | | Interest Compounded | Interest Credited | Minimum Opening Deposit | Minimum Balance to Avoid a Service Fee | Minimum Balance to Earn the Stated APY | Balance Method to Calculate Dividends | |
| Personal Savings $0.00 to $499.99 $500.00 and greater | See Separate Rate Schedule | Monthly | Monthly | --- | $500.00 | --- | Daily Balance | Account transfer and withdrawal limitations apply. |
| YouthSaver | | Monthly | Monthly | --- | --- | --- | Daily Balance | Account transfer and withdrawal limitations apply. |
| IRA/Roth IRA Savings | | Monthly | Monthly | --- | --- | --- | Daily Balance | --- |
| Coverdell Education Savings | | Monthly | Monthly | --- | --- | --- | Daily Balance | Account withdrawal limitations apply. |
| Money Market $1,000.00 to $2,499.99 $2,500.00 to $9,999.99 $10,000.00 to $24,999.99 $25,000.00 to $49,999.99 $50,000.00 to $99,999.99 $100,000.00 and greater | | Monthly | Monthly | $1,000.00 | --- | $1,000.00 | Daily Balance | Account transfer and withdrawal limitations apply. |
| Basic Checking | | --- | --- | $25.00 | --- | --- | --- | --- |
| Cash Back Checking $5,000.00 to $7,499.99 $7,500.00 to $9,999.99 $10,000.00 and greater | | Monthly | Monthly | $25.00 | $500.00 | $5,000.00 | Daily Balance | --- |
| Cash Back Student Checking $5,000.00 to $7,499.99 $7,500.00 to $9,999.99 $10,000.00 and greater | | Monthly | Monthly | $25.00 | --- | $5,000.00 | Daily Balance | --- |
| Business Interest Checking | | Monthly | Monthly | $100.00 | $3,000.00 | $3,000.00 | Daily Balance | --- |

## ACCOUNT DISCLOSURES

***Except as specifically described, the following disclosures apply to all of the accounts.***

**1.   RATE INFORMATION —** The annual percentage yield is a percentage rate that reflects the total amount of interest to be paid on an account based on the interest rate and frequency of compounding for an annual period. For Personal Savings and YouthSaver accounts, the interest rate and annual percentage yield may change at any time as determined by the Credit Union's Board of Directors. For IRA/Roth IRA Savings, Coverdell Education Savings, Money Market, Cash Back Checking, Cash Back Student Checking and Business Interest Checking accounts, the interest rate and annual percentage yield may change quarterly as determined by the Credit Union's Board of Directors. The Personal Savings, Money Market, Cash Back Checking, and Cash Back Student Checking accounts are tiered rate accounts. The balance

© CUNA Mutual Group 1993, 2003, 07, 08, 10 All Rights Reserved

DMIJPF (D37502)-e

ranges and corresponding interest rates and annual percentage yields applicable to each tier are disclosed in a separate Rate Schedule. Once a particular range is met, the interest rate and annual percentage yield for that balance range will apply to the full balance of your account.

**2.   INTEREST COMPOUNDING AND CREDITING —** The compounding and crediting frequency applicable to each account is set forth in the Rate Schedule.

**3.   ACCRUAL OF INTEREST —** For all earning accounts, interest will begin to accrue on noncash deposits (e.g. checks) on the business day you make the deposit to your account. If you close your account before accrued interest is credited, you will not receive the accrued interest.

**4.   BALANCE INFORMATION —** To open any account, you must deposit or already have on deposit the minimum required share(s) in a Membership Share account. Some accounts may have additional minimum opening deposit requirements. The minimum balance requirements applicable to each account are set forth in the Rate Schedule. For Personal Savings, Cash Back Checking and Business Interest Checking accounts, there is a minimum daily balance required to avoid a service fee for the calendar month. If the minimum daily balance requirement is not met each day of the crediting period, you will be charged a service fee as stated in the Fee Schedule. For Money Market, Cash Back Checking, Cash Back Student Checking, and Business Interest Checking accounts, there is a minimum daily balance required to earn the annual percentage yield disclosed for the crediting period. If the minimum daily balance requirement is not met each day of the crediting period, you will not earn the stated annual percentage yield. For accounts using the daily balance method as stated in the Rate Schedule, interest is calculated by applying a daily periodic rate to the principal in the account each day.

**5.   ACCOUNT LIMITATIONS —** For Personal Savings, YouthSaver and Money Market accounts, you may make no more than six (6) transfers and withdrawals from your account to another account of yours or to a third party in any month by means of a preauthorized, automatic, or Internet transfer, by telephonic order or instruction, or by check, draft, debit card or similar order. If you exceed these limitations, your account may be subject to a fee or be closed. For Coverdell Education Savings accounts, withdrawals for educational purposes only and used by age 30 or account must be converted to Regular IRA. For IRA/Roth IRA Savings, Basic Checking, Cash Back Checking, Cash Back Student Checking, and Business Interest Checking accounts, no account limitations apply.

**6.   FEES FOR OVERDRAWING ACCOUNTS —** Fees for overdrawing your account may be imposed on each check, draft, item, ATM transaction and one-time debit card transaction (if member has consented to overdraft protection plan for ATM and one-time debit card transactions), preauthorized automatic debit, telephone initiated withdrawal or any other electronic withdrawal or transfer transaction that is drawn on an insufficient available account balance. The entire balance in your account may not be available for withdrawal, transfer or paying a check, draft or item. You may consult the Funds Availability Policy Disclosure for information regarding the availability of funds in your account. Fees for overdrawing your account may be imposed for each overdraft, regardless of whether we pay or return the draft, item or transaction. If we have approved an overdraft protection limit for your account, such fees may reduce your approved limit. Please refer to the Fee Schedule for current fee information.

For ATM and one-time debit card transactions, you must consent to the Credit Union's overdraft protection plan in order for the transaction amount to be covered under the plan. Without your consent, the Credit Union may not authorize and pay an overdraft resulting from these types of transactions. Services and fees for overdrafts are shown in the document the credit union uses to capture the member's opt-in choice for overdraft protection and the Schedule of Fees and Charges.

**7.   MEMBERSHIP —** As a condition of membership, you must purchase and maintain the minimum required share(s) as set forth below.

| | |
|---|---|
| Par Value of One Share | $1.00 (funded by the Credit Union) |
| Number of Shares Required | 1 |

**8. RATES -** The rates and fees appearing with this Schedule are accurate as of the effective date indicated on this Truth-in-Savings Disclosure. If you have any questions or require current rate and fee information on your accounts, please call the Credit Union.

Your savings federally insured to at least $250,000 and backed by the full faith and credit of the United States Government

**NCUA**

National Credit Union Administration, a U.S. Government Agency

## PERSONAL ACCOUNTS FEE SCHEDULE
### Savings and Checking Account Fees

| Fee: | Amount: | What does this mean: |
|---|---|---|
| Maintenance Fee (Savings) | $5.00 per month | Members who meet one of the following will not be assessed a maintenance fee:<br>• have a $500.00 combined average balance in all savings accounts<br>• have a checking or loan product (including an open line of credit)<br>• are under 25 or over 64 years of age<br>• have a savings account established for less than 120 days |
| Maintenance Fee (Cash Back Checking) | $6.00 per month | Members who meet one of the following will not be assessed a fee:<br>• have a $500.00 monthly average balance in the cash back checking account<br>• have an incoming automatic deposit (Ex: Payroll, Social Security, Pension)<br>• Perform any combination of 15 qualifying transactions in a month. Qualifying transactions include debit card and bill pay transactions. Debit Card Transactions must be posted to the account by the last day of the month. Excludes ATM transactions.<br>• are under 24 years or older than 65 years |
| Maintenance Fee (Basic Checking) | $10.00/$15.00 per month | Members who have direct deposit will be assessed a $10.00 monthly maintenance fee. Members who do not have direct deposit will be charged a $15.00 monthly maintenance fee. |
| Paper Statement Fee | $2.00 per statement | A $2.00 fee is assessed for mailing paper statements to members with a checking account. |
| Insufficient Funds Charge (Returned) | $30.00 per item | This fee is assessed when a check, automatic withdrawal, debit card transaction and/or ATM withdrawal is submitted to a checking account with non-sufficient funds to cover payment of the transaction.<br>• The insufficient funds charge fee is $25.00 per transaction for those under the age of 24 years. |
| OD Transfer Fee | $5.00 per item | A $5.00 fee is assessed when a check, automatic withdrawal, debit card transaction and/or ATM withdrawal (for $5.00 or greater) is submitted to a  checking account with non-sufficient funds to cover the payment requiring a transfer from a share account or line of credit to cover the charge. Members will not be assessed a fee for processing the transfer themselves via automatic transfers. Members are allowed 6 automatic transfers per savings account per month. |
| Premium Overdraft Fee | $30.00 per item | A fee is assessed when a check, debit card transaction, and/or ATM withdrawal is submitted to a checking account with non-sufficient funds and the credit union pays the item. The member must qualify for and elect (if applicable) overdraft protection to cover the transaction. |
| Returned Check Charge | $25.00 per item | A fee is assessed when a member deposits a check into their account and there are insufficient funds to cover the payment. |
| Stop Payment Fee | $30.00 per item | A fee is assessed when a member requests a stop payment on an automatic transaction or check. |
| International Debit Card Transaction Fee | 1.00% of transaction amount | A fee is assessed when a Credit Union ONE debit card is utilized for an international transaction. |
| ATM Out of Network Fee | $1.50 per transaction | A fee is assessed when a Credit Union ONE member performs a transaction at a non-Credit Union ONE or non-CO-OP Network (Shared Branching) ATM. |
| Foreign Item Fee | $7.00 per item | A fee is assessed when a member deposits a check into their account that is drawn on an institution outside of the United States. |

| Fee: | Amount: | What does this mean: |
|---|---|---|
| Domestic Wire WTH Fee | $25.00 per transaction | A fee is assessed per outgoing wire transfer within the United States. |
| International Wire WTH Fee | $50.00 per transaction | A fee is assessed per outgoing wire transfer outside of the United States. |
| Legal Processing Fee | $75.00 | A fee is assessed for processing legal requests including but not limited to garnishments and levies. |
| Online Inter-Institutional Fee | $2.50 per transaction | A fee is assessed when a member performs an electronic deposit or withdrawal between their Credit Union ONE account and an account at another financial institution. |
| Directo a Mexico Transfer Fee | $5.00 per transfer | A fee is assessed to process an electronic transaction to a financial institution in Mexico – available at our Southwest Detroit Branch only. |
| Acct Inactivity Fee | $5.00 per month | A fee is assessed if an account has not had activity within the past 12 months: Excludes: IRAs, CDs, loans and minor accounts |
| Escheatment | $50.00 per account | A fee is assessed if an account has not had activity with the past three years and is required to be escheated to the State of Michigan. |
| Returned Mail Fee | $5.00 | A fee is assessed if mail is returned to Credit Union ONE as non-deliverable. |
| Online Bill-Pay Expedited Check Payment Fee | $19.95 per item | Credit Union ONE will expedite a payment for members through Online Bill-Pay. A fee will be assessed for each request made through Online Bill-Pay. |
| Service Center Withdrawal Fee | $10.00 | Members who maintain a $500.00 combined average balance in all savings accounts, have a checking account, or any loan product with a balance will not be assessed this fee. |
| Debit Card Replacement Fee | $5.00 | Excludes cards that are re-issued connected to the normal card expiration date. |
| Insufficient Funds Charge (Paid) | $30.00 | A fee is assessed when an automatic withdrawal is submitted to a checking account with non-sufficient funds and the credit union pays the item. The member must qualify for overdraft protection to cover the transaction. |
| History Fee | $2.00 | A $2.00 fee will be assessed for each transaction history printout. |
| Money Order | $3.00 per item | A $3.00 fee will be assessed per money order |
| Cashier's Check | $3.00 per item | A $3.00 fee will be assessed per cashier's check. |
| Non-Member Check Cashing | $5.00 per check | A $5.00 fee will be assessed for each check cashed by a non-member at a Credit Union ONE branch. |
| Returned Item Fee | $30.00 per item | A $30.00 fee will be assessed to return a preauthorized electronic transfer item presented against a savings account that exceeds the allowable six transfers per month. |
| Closure Fee | $5.00 | A fee is assessed on an account closed within the first 90 days of being opened. |

Credit Union ONE
400 E. Nine Mile
Ferndale, MI 48220
(800) 451-4292
www.cuone.org

DMIJPF (D37502)-e

# EXHIBIT B



# Overdraft Protection Disclosure

An overdraft occurs on your account when you do not have enough available funds in your checking account to cover a transaction. Your account features an automatic overdraft protection plan whereby funds from applicable savings accounts will be transferred to your checking account to cover your overdraft. If funds are transferred from any of your applicable savings accounts to cover an overdraft you will be assessed a fee according to the Personal Accounts Fee Guide. We also offer a line of credit that may serve as an additional overdraft protection plan. You may inquire about this plan at any branch or by calling the Member Contact Center at 800-451-4292.

In the event you do not have enough available funds in your overdraft protection plans to cover an overdraft, we may, at our discretion, extend an additional overdraft service to you. This service allows Credit Union ONE the discretion to honor and pay checks, automatic bill payments and other transactions made using your account number so that the items presented against your checking account are not returned unpaid. As part of this overdraft service the credit union may also authorize and pay, at our discretion, overdrafts as a result of ATM and everyday debit card transactions if you tell us to (Opt-In). If you do not opt-in to this service for ATM and everyday debit card transactions your transaction will be declined.

If the credit union authorizes and pays an item as part of this overdraft service you will be notified for each occurrence when the items are paid. You agree to reimburse the credit union immediately for any and all paid overdrafts. If you have not reimbursed the credit union for payment of overdraft(s) we may suspend your service after 14 days. If you have not reimbursed the credit union by day 30 your membership will be terminated and account(s) charged-off.

This overdraft service in a non-contractual courtesy and is discretionary. It is not an obligation of the credit union and the credit union may refuse to provide this service on any checking account at any time. There is no contractual right to overdraft service and payment of an item is not guaranteed under this service. The amount that an account may be overdrawn shall in all cases be subject to the credit union's discretion. The credit union reserves the right to change or terminate overdraft service at any time.

For each item paid using overdraft service you will be charged an overdraft fee as published in the Personal Accounts Fee Guide. If the credit union chooses not to pay checks, automatic withdrawals, bill payments, or other items using your account number that are presented for payment when the account has insufficient funds, the item will be returned and you will be assessed an NSF (Non-Sufficient Funds) fee as published in the Personal Accounts Fee Guide.

In general, overdraft service is granted to consumer checking accounts (excluding basic checking) only under the following circumstances:

- Member for at least 30 days and in good standing
- Account has not been overdrawn resulting in a negative balance in any checking or savings accounts
- Member has no delinquent loans or other past due obligations with the credit union

Overdraft service for check, automatic bill payments and other transactions using your account number does not require member consent, however, if you would like overdraft service for ATM and everyday debit card transactions you must tell us you want this service (Opt-In). You may be removed (opt-out) from overdraft service and/or overdraft protection plans by notifying us either by sending a written and singed request, calling the Member Contact Center at 800-451-4292, or by visiting any branch location.

Federally Insured by NCUA